361 F.2d 870
 ALLSTATE INSURANCE COMPANY, Government Employees Insurance
Company, Nationwide Mutual Insurance Company, North Carolina
Farm Bureau Mutual Insurance Company, and State Farm Mutual
Automobile Insurance Company Appellants,
v.
Edwin S. LANIER, Commissioner of Insurance for the State of
North Carolina, and T. Wade Bruton, Attorney
General of the State of North Carolina, Appellees.
 No. 10192.
 United States Court of Appeals Fourth Circuit.
 Argued Feb. 11, 1966.
Decided May 27, 1966.
 
 Howard Adler, Jr., Washington, D.C. (Herbert A. Bergson, Donald L. Hardison, Washington, D.C., and J., Melville Broughton, Jr., and Broughton & Broughton, Releigh, N.C., and Bergson & Borkland, Washington, D.C., on brief), for appellants.
 Charles D. Barham, Jr., Asst. Atty. Gen of North Carolina (Thomas Wade Bruton, Atty. Gen. of North Carolina, on brief), for appellees.
 Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.
 SOBELOFF, Circuit Judge:
 
 
 1
 The State of North Carolina maintains a system of automobile insurance regulation under which uniform rates and standards are promulgated upon the initiative of a rating bureau composed of all the insurance companies, whose proposals are then finally approved, modified or disapproved by the Commissioner of Insurance. North Carolina Gen. Stats. 58-246 to 58-248.8 (1965). All companies selling insurance must adhere to the established rates and standards as a condition of doing business in the State. Deviations from the prescribed rates are permitted with the approval of the Insurance Commissioner, but since a 1961 amendment to the Act, his authority is restricted to authorizing upward deviations only. See id. 58-248.2, as amended by 1961 North Carolina Session Laws, ch. 1006. Thus, the individual companies are effectively precluded from competing through offering lower premium rates, although they may still offer dividend return features, improved services, etc.
 
 
 2
 Appellants, five large insurance companies doing 29% Of the total business in North Carolina, filed suit in the District Court for the Eastern District of North Carolina to obtain a judgment declaring the statute invalid insofar as it restricts competition by prohibiting the offering of lower premium rates. They alleged that the North Carolina statute had been pre-empted by the provisions of the Sherman Act, 15 U.S.C.A. 1-7 (1958), and the McCarran-Ferguson Act, 15 U.S.C.A. 1011-1015 (1958).[1] On cross-motions for summary judgment, the District Court dismissed the complaint on the ground that since the rating bureau was established and administered under the active supervision of the State, it was not subject to attack under the federal antitrust laws, which condemn only private noncompetitive activities. We think this ruling was correct.
 
 
 3
 In Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court held that the antitrust laws were inapplicable to an agricultural proration program which, while restricting competition among raisin growers and maintaining minimum prices, was established and actively supervised under the California Agricultural Prorate Act.
 
 
 4
 'We may assume for present purposes that the California prorate program would violate the Sherman Act if it were organized and made effective solely by virtue of a contract, combination or conspiracy of private persons, individual or corporate. We may assume also, without deciding, that Congress could, in the exercise of its commerce power, prohibit a state from maintaining a stabilization program like the present because of its effect on interstate commerce. * * * But it is plain that the prorate program here was never intended to operate by force of individual agreement or combination. It derived its authority and efficacy from the legislative command of the state and was not intended to operate or become effective without that command. We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state control over its officers and agents is not lightly to be attributed to Congress.' 317 U.S. at 350-351, 63 S.Ct. at 313.
 
 
 5
 The District Court's finding in the present case that the North Carolina rating bureau was operated under the active supervision of the State is not challenged in this court,[2] and we find no merit in the distinction suggested by appellants between the injunction sought in Parker v. Brown and the declaration of preemption sought here. The central question in both cases is whether a program of regulation established and actively supervised by a state is subject to the antitrust laws. Absent congressional action departing from the rule of Parker v. Brown, the North Carolina statutory plan is clearly valid.[3]
 
 
 6
 Nothing in the 1945 McCarran-Ferguson Act or its legislative history suggests a limitation upon the principle of Parker v. Brown. The statute was passed in response to the Supreme Court's decision in United States v. South-Eastern Underwriters Assoc., 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) (hereafter SEUA), upholding an indictment against a group of private insurance companies charged with employing boycotts, coercion and intimidation to further a conspiracy to maintain noncompetitive premium rates. Because of earlier court decisions indicating that insurance was not part of commerce for the purpose of state regulation,[4] there was widespread fear that the SEUA case might endanger state autonomy in the regulation and taxation of the insurance business.
 
 
 7
 To allay these fears Congress declared in section 1 of the McCarran-Ferguson Act that
 
 
 8
 '* * * the continued regulation and taxation by the several States of the business of insurance is in the public interest, and * * * silence on the part of Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.'
 
 
 9
 Section 2(a) of the Act reinforces this precept by expressly subjecting insurance companies to state regulation,[5] and section 2(b) provides that unless a federal statute is made specifically applicable to the insurance business, it shall not 'invalidate, impair or supersede' any state insurance law.[6] And while the antitrust laws were made applicable by section 2(b) to insurance companies,[7] the debates explicitly recognized the continuing vitality of Parker v. Brown and of state created and state supervised rating bureaus like the one now under consideration.[8]
 
 
 10
 In short, the dominant purpose of Congress in passing the McCarran-Ferguson Act was to 'give support to the existing and future state systems for regulating and taxing the business of insurance' and 'to throw the whole weight of its power behind the state systems.' Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 429-430, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342 (1946). The statute did no more than clarify the boundaries of state and federal jurisdiction over the insurance business, and in no wise sought to affect the controlling substantive principle of Parker v. Brown. We are concerned here with no scheme delegating sovereign authority to a private group, or authorizing purely private combinations in violation of the antitrust laws.[9] The North Carolina statute merely permits the carriers who belong to the rating bureau to propose rates but final authority to approve or disapprove is lodged in the Insurance Commissioner. On this basis, the District Court properly held that the statute was not subject to antitrust challenge. Whether the statutory plan embodies the wisest and most effective type of regulation is, of course, not a judicial question. The decision is
 
 
 11
 Affirmed.
 
 
 
 [1]
 The matter was heard in the District Court by a single District Judge. No suggestion was made that only a three-judge district court had jurisdiction to declare the North Carolina statute invalid. There is no doubt, however, that no three-judge district court is required to adjudicate an attack on a state statute on the ground that it has been pre-empted by an act of Congress. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965)
 
 
 [2]
 The United States filed a memorandum in the District Court urging invalidation of the North Carolina program on the ground that it permitted the unsupervised establishment of minimum premiums by private companies. Compare Asheville Tobacco Bd. of Trade, Inc. v. FTC, 263 F.2d 502, 508-509 (4th Cir. 1959). Following the District Court's finding that establishment of rates was a governmental function, however, the United States has not joined in this appeal
 
 
 [3]
 See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 135-136, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); Miley v. John Hancock Mut. Life Ins. Co., 148 F.Supp. 299, 303 (D.Mass.1957), aff'd mem., 242 F.2d 758 (1957); Hitchcock v. Collenberg, 140 F.Supp. 894 (D.Md.1956), aff'd mem., 353 U.S. 919, 77 S.Ct. 679, 1 L.Ed.2d 718 (1957)
 
 
 [4]
 See e.g., New York Life Ins. Co. v. Deer Lodge County, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332 (1913); Paul v. Virginia, 75 U.S. (8 Wall.) 168, 19 L.Ed. 357 (1869). These cases did not deal with the question posed in SEUA: Whether insurance was 'commerce' falling within the regulatory powers of the federal government
 
 
 [5]
 'The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the Regulation or texation of such business.' 15 U.S.C.A. 1012(a)
 
 
 [6]
 15 U.S.C.A. 1012(b)
 
 
 [7]
 Ibid. Similarly, section 4 of the Act specified that the National Labor Relations Act, 29 U.S.C.A. 151-167, and the Fair Labor Standards Act, 29 U.S.C.A. 201-219, were applicable to insurance. 15 U.S.C.A. 1014
 
 
 [8]
 Senator Ferguson, co-sponsor of the bill, declared
 'This bill would permit-- and I think it fair to say that it is intended to permit-- rating bureaus, because in the last session we passed a bill for the District of Columbia allowing rating. What we saw as wrong was the fixing of rates without statutory authority in the States; but we believe that State rights should permit a State to say that it believes in a rating bureau. * * *' 91 Cong.Rec. 1481.
 See Also Id. at 1479 (Sen. Ferguson); 1480, 1481 (Sen. Murdock); 1480, 1485 (Sen. O'Mahoney, Senate conferee on the bill, citing with approval Parker v. Brown). The President expressed the same view: 'The antitrust laws do not conflict with affirmative regulation of insurance by the States such as agreed insurance rates if they are affirmatively approved by State officials.' Id. at 1479 (letter from President Roosevelt to Senator Radcliffe).
 
 
 [9]
 Compare, e.g., Asheville Tobacco Bd. of Trade, Inc. v. FTC, 263 F.2d 502 (4th Cir. 1959); United States v. Maryland State Licensed Beverage Ass'n, 138 F.Supp. 685 (D.Md.1956)