**GAS LIGHT COMPANY OF COLUMBUS, Plaintiff-Appellant,**

v.

**GEORGIA POWER COMPANY and the Southern Company, Defendants-Appellees.**

No. 30091.

United States Court of Appeals, Fifth Circuit.

March 23, 1971.

Albert W. Stubbs, Hatcher, Stubbs, Land, Hollis & Rothschild, Columbus, Ga., Law Offices of Joseph L. Alioto, Maxwell M. Blecher, Harold R. Collins, Jr., Peter J. Donnici, Peter L. Spinetta, San Francisco, Cal., for plaintiff-appellant.

Albert G. Norman, Jr., Atlanta, Ga., for Atlanta Gas Light Co., amicus curiae; Kent E. Mast, Carroll L. Wagner, Jr., Hansell, Post, Brandon & Dorsey, Atlanta, Ga., of counsel.

William H. Schroder, Allen E. Lockerman, James E. Joiner, Atlanta, Ga., S. E. Kelly, Jr., Columbus, Ga., for Georgia Power Co.; Troutman, Sams, Schroder & Lockerman, Atlanta, Ga., Kelly, Champion & Henson, Columbus, Ga., of counsel.

Terence H. Benbow, Arnold S. Anderson, Steven A. Berger, New York City,

William G. Scrantom, Jr., Columbus, Ga., for Southern Co.; Swift, Pease, Davidson & Chapman, Columbus, Ga., Winthrop, Stimson, Putnam & Roberts, New York City, of counsel.

Before BELL, DYER and RONEY, Circuit Judges.

BELL, Circuit Judge:

This appeal presents an important question in drawing the balance between state action excluded from the federal antitrust laws under the aegis of Parker v. Brown, 1943, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315, on the one hand, and includible non-state action on the other, in the field of state regulated public utility monopolies. The case comes to us on an appeal by plaintiff from a summary judgment entered for defendants, D.C., 313 F.Supp. 860, on a stipulation of facts which is full and complete for the purposes of the issue presented. We affirm.

Plaintiff, Gas Light Company of Columbus, is the sole distributor of natural gas in the Columbus, Georgia area. Its rates and services are regulated by the Georgia Public Service Commission. The defendants are Georgia Power Company, an electric utility engaged in the sale of electricity in the Columbus area and in most of Georgia, and the Southern Company, Georgia Power's parent corporation. Also, Georgia Power is a Georgia Public Service Commission regulated monopoly, being the sole supplier of electricity in its territory of operation. Others are charged as co-conspirators but are not named as parties defendant. The complaint alleged violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, and § 3 of the Clayton Act, 15 U.S.C.A. § 14.[1] The violation is said to arise from a nation-wide conspiracy among electric utilities to eliminate natural gas as a competitive energy source. Treble damages and injunctive relief are sought.

### I.

The claimed conspiracy rested on specified acts and practices charged to Georgia Power and allegedly ordered by the Southern Company. In considering these acts and practices, we must have in mind that gas is not competitive with electricity in certain aspects such as in lighting generally, and in the operation of small household appliances and the like. Gas is competitive with electricity for use in operating furnaces and space heaters, air conditioners, water heaters, stoves, refrigerators and clothes driers. There is vigorous competition between the electric and gas industry for this latter type of business.

There are five acts and practices charged as a basis for the antitrust violations. One of these was not considered

---

1. 15 U.S.C.A. § 1:
   "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *"
   15 U.S.C.A. § 2:
   "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, * * *"
   15 U.S.C.A. § 14:
   "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

in the district court and will not be considered here except to state that it charged Georgia Power with placing a restrictive covenant, requiring all-electric building use, in a deed conveying 30 acres of land. This restrictive covenant was later held invalid by the Supreme Court of Georgia. Gas Light Company of Columbus v. Georgia Power Company, 1969, 225 Ga. 851, 171 S.E.2d 615. At any rate, this claim still resides in the district court. The summary judgment which forms the subject matter of this appeal, taken pursuant to Rule 54(b), F.R.Civ.P., and 28 U.S.C.A. § 1291, eliminated each of the other acts and practices from the case as bases for recovery. Each involved rate and service matters which had been considered by the Georgia Public Service Commission in due course.

These acts and practices are as follows:

### Rate Schedule B–10–B

This is a general service rate in effect since 1933 with subsequent amendments. The charge reduces as the load increases. Plaintiff urges that this rate schedule is preferential because the increased usage to obtain decreased rates involves usages which compete with gas. This argument rests on the idea that the captive market for electricity (lighting, small appliances) requires only low usage and thus the decreased rates apply to those high use areas where gas and electricity compete. Plaintiff also claims that the rate permits Georgia Power to sell electricity at less than its incremental costs.

### Rate Schedule TE–2

This is a budget billing plan for homeowners whose primary source of energy is electricity and whereunder the annual electric bill is estimated and divided into twelve equal installments with an adjustment at the end of the year based on actual usage. This schedule has been in effect since 1965 pursuant to an order of the Commission. Plaintiff claims that this rate schedule is misrepresented to constitute a guaranteed flat charge for electricity.

### Underground Residential Distribution Wiring Plan

This rate came about in 1967 by reason of the Federal Housing Authority requiring underground wiring in new subdivisions. Plaintiff contends that Georgia Power uses it to bribe contractors to construct totally electric subdivisions and apartments. The stipulation demonstrates that Georgia Power requires the contractor to pay a part of the cost of underground wiring. It can be argued, however, that the effect is that Georgia Power pays a part of the cost since each pays a part and Georgia Power pays more if electric heat is to be used. The plan offered by Georgia Power was rejected by the Commission which then promulgated its own underground wiring distribution plan and charge.

### Residential Wiring Plan, Rule G

This again is a rate schedule which plaintiff contends was adopted for use in bribing builders to go totally electric in home and apartment construction. This schedule was implemented in 1961 pursuant to an order of the Commission but was revised by the Commission in 1962 after hearings. Under it Georgia Power makes a promotional payment of $50.00 to $180.00 per unit if residences or apartments are wired for electric range and electric water heater, dryer or space heating.

Each of these acts and practices are rate schedules and each has been considered by the Georgia Public Service Commission in an adversary proceeding. Each is effective by order of the Commission. In addition, B–10–B, TE–2 and Rule G were the subject matter of further extensive hearings on the complaint of plaintiff and Atlanta Gas Light Company beginning in 1967 with the result of a further order of the Commission relative to each being entered in 1969. TE–2 and Rule G were left in effect but Georgia Power was ordered to revise B–

10–B in a manner prescribed by the Commission. Moreover, the Commission retains jurisdiction with respect to each of the rate schedules for entering such other and further orders as the Commission may deem proper.

## II.

The question presented is whether the court below erred in holding that these rate schedules were the products of state action, i. e., products of the Georgia Public Service Commission, and as such, excluded from the proscription of the federal antitrust laws under the teaching of Parker v. Brown, supra.

We turn then to Parker v. Brown which is the benchmark in the consideration of the issue presented. As will be seen, a frame of reference is established by it and some of the decisions which have followed it.

In Parker v. Brown, a raisin producer brought an action to enjoin a state official and other state agents from enforcing a California raisin marketing prorate program instituted pursuant to a California statute. The intent of the program was to supplant chaotic competition between farmers with centralized marketing plans. The statute set up an agricultural advisory commission, composed of state officers, which was empowered to authorize creation of a prorate plan and appoint a committee upon the petition of raisin producers. The committee was authorized to administer the program, subject to supervision by the commission.

As adopted, the raisin program was designed to regulate the harvesting and marketing of raisins in California, and the price at which the various grades of raisins would be sold by producers to packers. Plaintiff attacked the program under §§ 1 and 2 of the Sherman Act. The Supreme Court assumed that the plan "would violate the Sherman Act if it were organized and made effective solely by virtue of a contract, combination of conspiracy of private persons, individual or corporate." 317 U.S. at 350,

63 S.Ct. at 313. The court stated, however, that the Sherman Act is not directed at restraining acts of the state as directed by its legislature. While conceding that the plan had many private characteristics, the court concluded in holding for the defendants that "it is the state, acting through the Commission, which adopts the program and which enforces it with penal sanctions, in the exercise of a governmental policy." 317 U.S. at 352, 63 S.Ct. at 314.

Although the Supreme Court has not decided subsequently a case similar on its facts, the continuing vitality of the Parker exclusionary rationale is demonstrated by the decisions of the court in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 1961, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464, and in United Mine Workers v. Pennington, 1965, 381 U.S. 657, 85 S.Ct. 1585, 14 L. Ed.2d 626. In these cases the court held that joint efforts to influence public officials in the passage of laws were not within the scope of the antitrust laws. Meanwhile there have been several federal decisions which explicate the Parker v. Brown holding in varying factual contexts and which bear on the issue before us.

In Allstate Ins. Co. v. Lanier, 4 Cir., 1966, 361 F.2d 870, the court affirmed the dismissal by the district court of an antitrust action brought to enjoin the North Carolina system of regulating automobile insurance rates. The state maintained a system under which uniform rates and standards were promulgated at the initiative of a rating bureau, composed of the insurance companies, subject to approval by the Commissioner of Insurance. In holding that Parker immunity applied, the court said that North Carolina's program qualified as a product of state action because it was "under the active supervision of the State", even though the rates were of private origin. 361 F.2d at 872. See also E. W. Wiggins Airways, Inc. v. Mass. Port Authority, 1 Cir., 1966, 362 F.2d 52.

The other side of the coin may be seen in Asheville Tobacco Board of Trade v.

Federal Trade Commission, 4 Cir., 1959, 263 F.2d 502. There the facts were that a North Carolina statute authorized the creation of local Tobacco Boards of Trade for the purpose of making rules and regulations relative to handling the sale of tobacco at auction. The Boards of Trade made their own rules and regulations and operated without regulation or supervision by the state. Although remanding the case to the Federal Trade Commission for reconsideration of other questions, the court concluded that the activity on the part of the defendant Board of allocating selling time in tobacco warehouses was not precluded from antitrust regulation by Parker v. Brown. The distinction was that the activity was individual or private on the part of the Board as distinguished from state action.

In Woods Exploration & Producing, Inc. v. Aluminum Co. of America, 5 Cir., 1971, 438 F.2d 1286 [1971], we refused to characterize as state action the regulation of production of natural gas by the Texas Railroad Commission, since plaintiffs alleged that defendants filed false information with the Commission. We held that such "actions taken to subvert the Commission scheme for anticompetitive purposes are subject to antitrust strictures." Supra at 1303. Such fraudulent conduct by regulated companies did not fall under the cloak of the state action concept of Parker v. Brown.[2] Unlike the situation in Woods Exploration, here we have no claim that the Georgia Power filed false information with the Commission or otherwise engaged in fraudulent conduct.

And, unlike the situation in George R. Whitten, Jr. v. Paddock Pool Builders, Inc., 1 Cir., 1970, 424 F.2d 25, we deal with state regulated monopolies and not with an activity wherein the state required competitive bidding. In Whitten, the conduct which formed the basis of the antitrust complaint had to do with the adoption by public officials of defendant Paddock's specifications for swimming pools and related equipment thereby excluding competitors in a market where competitive bidding was required. The court found this conduct to be outside the Parker exclusion.

This brings us to Washington Gas Light Co. v. Virginia Electric & Power Co., 4 Cir., 438 F.2d 248 [1971], a case somewhat similar to our own. There plaintiff attacked defendant VEPCO's "underground residential distribution" practice or service, a service much like Georgia Power's here, as a violation of the antitrust laws. The district court agreed, holding that the practice was a per se violation of the Sherman Act as an illegal tying arrangement, and also a violation of the violation of the Clayton Act as an exclusive dealing arrangement. The district court did not consider the question of the practice being excluded from the reach of the antitrust laws by Parker. The Fourth Circuit reversed, holding the Parker exemption applicable although the State Corporation Commission made no investigation and gave no approval to the VEPCO practice in question. The court preferred to infer that silence meant approval of the plans, and that there was therefore state action. Stressing that the Commission "possessed adequate regulatory powers to stop VEPCO if it chose to do so", supra at 252, the court concluded:

"We think VEPCO's promotional practices were at all times within the ambit of regulation and under the control of SCC, and we hold these practices exempt from the application of the laws of antitrust under the Parker doctrine." Supra at 252.

In the instant case, it is unquestioned that the Georgia Public Service Commission has the power to regulate the rates and practices of public utilities in Georgia. Ga.Const., Art. IV, § I, ¶ I; Art.

---

2. The factual situation in Trucking Unlimited v. California Motor Transport Co., 9 Cir., 1970, 432 F.2d 755 [1970], is akin to the fraudulent information aspect of Woods Exploration in that the gist of the anticompetitive conduct there charged was an abuse of the processes of the regulatory commission and courts in contesting the certificate applications of competitors.

IV, § IV, ¶ III. See Ga.Code Ann. §§ 93–304, 307 and 309. Here, as stated, the Commission has been anything but silent concerning these practices of Georgia Power; thus under the *Washington Gas Light* holding, the *Parker* exclusion would apply in the instant case.

However, it is not necessary for us to extend the *Parker* exclusion to the point of its extension in *Washington Gas Light* and we do not do so. As we have seen above, the Commission here gave lengthy consideration to each of the practices and rates under attack, and after full adversary hearings ordered them into effect, some with major modifications. Defendants' conduct cannot be characterized as individual action when we consider the state's intimate involvement with the rate-making process. Though the rates and practices originated with the regulated utility, Georgia Power, the facts make it plain that they emerged from the Commission as products of the Commission. They are thus immune from the operation of the antitrust laws under the *Parker* exemption.

It is to be added that as products of the Commission, they are state activity as distinguished from mere private action subject to antitrust regulation under the admonition of the court in *Parker* that " \* \* \* a state does not give immunity to those who violate the Sherman Act \* \* \* by authorizing them to violate it, or by declaring that their action is lawful." 317 U.S. at 351, 63 S. Ct. at 314.[3]

Our view is that the *Parker* exclusion applies to the rates and practices of public utilities enjoying monopoly status under state policy when their rates and practices are subjected to meaningful regulation and supervision by the state to the end that they are the result of the considered judgment of the state regulatory authority; here the Georgia Public

Service Commission. Here the regulatory judgment was entered after notice and adversary proceedings.

Affirmed.

---

3. On the inapplicability of the Parker v. Brown state action exclusionary principle in federally regulated activities, see

United States v. Philadelphia National Bank, 1963, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915.