**NORMAN'S ON THE WATERFRONT, INC.**

**v.**

**REUBEN B. WHEATLEY, COMMISSIONER OF FINANCE AND CHAIRMAN OF THE BOARD OF ALCOHOLIC BEVERAGES, and THE BOARD OF ALCOHOLIC BEVERAGES**

**A.H. RIISE LIQUOR STORE, INC., CHARLES BELLOWS & CO., LTD., THE GENERAL TRADING CORPORATION, and INTERNATIONAL LIQUORS, INC.**
(Intervenors in D.C.)

**A.H. RIISE LIQUOR STORE, INC., THE GENERAL TRADING CORPORATION, and INTERNATIONAL LIQUORS, INC., Appellants**

No. 19,428

United States Court of Appeals

Third Circuit

Argued March 4, 1971

Decided June 17, 1971

*See, also, 444 F.2d 1011*

HOWARD ADLER, JR., ESQ. (BERGSON, BORKLAND, MAR-
GOLIS & ADLER), Washington, D.C., *for appellants*

FRANKLIN POUL, ESQ., WOLF, BLOCK, SCHORR & SOLIS-COHEN, Philadelphia, Penna., *for appellee*

Before HASTIE, *Chief Judge*, ADAMS and GIBBONS, *Circuit Judges*

OPINION OF THE COURT

ADAMS, *Circuit Judge*

This case presents a difficult problem regarding the effect of the antitrust laws upon the validity of the Virgin Islands Alcoholic Beverages Fair Trade Law, 8 V.I.C. §§ 150–160. The Legislature of the Virgin Islands enacted this law on February 10, 1969, but on March 12, 1969, before the law was to become effective, Norman's on the Waterfront, Inc. (Norman's) brought this suit in the United States District Court for the District of the Virgin Islands. Norman's sought declaratory and injunctive relief against enforcement of the law by the Board of Alcoholic Beverages (Board). A hearing was postponed several times but the Board agreed not to enforce the law until the District Court made its ruling.

On January 22, 1970, four corporations which were engaged in the importation and sale of liquor in the Virgin Islands—Charles Bellows & Co., Ltd., A. H. Riise Liquor Store, Inc., The General Trading Corporation and International Liquors, Inc.—moved to intervene as defendants in opposing the suit. Norman's consented to the intervention and the District Court granted the motion on February 2, 1970. The United States filed a brief as amicus curiae both in the District Court and in this Court, urging that the relief sought by Norman's be granted.

On March 11, 1970, oral argument was held before the Honorable Almeric L. Christian. Judge Christian filed an opinion on August 14, 1970, declaring the law violative of § 3 of the Sherman Act, 15 U.S.C. § 3, and finding Norman's entitled to injunctive relief. A final order consistent

375

with the opinion was entered on October 5, 1970. From the order, three of the intervenors appealed, but the Board of Alcoholic Beverages did not.

## I.

The threshhold question presented here is whether the intervenors have a right to appeal from the District Court's order. If they have such a right, we must then decide whether the law, or portions of it, are valid under the McGuire Fair Trade Act, 15 U.S.C. § 45, or under the doctrine of governmental action enunciated in Parker v. Brown, 317 U.S. 341 (1943), or under the twenty-first amendment to the Constitution.

The Virgin Islands Alcoholic Beverages Fair Trade Law contains mandating and contractual provisions. 8 V.I.C. § 150–160. Section 152 requires that all importers and wholesalers register with the Board and list their wholesale price for each brand of liquor sold, and Section 156 commands that the brand owner or his licensee also file a list of the minimum retail prices at which his brands of liquor may be sold in the Virgin Islands. No sales are permitted below such minimum prices.

In addition to these mandatory features, Sections 153 to 155 permit wholesalers to enter contracts with retailers specifying the minimum price at which liquor may be sold. Such contracts bind non-signing retailers as well as those who are a party to the contract.

Norman's contends the intervenors have no standing to appeal because no relief was sought or granted against them. By its terms, the District Court's order enjoined only the Board of Alcoholic Beverages and its chairman. However, this fact alone does not necessarily preclude the intervenors' appeal. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 256 (1946). According to one leading commentator, "[t]he intervenor, once intervention has been

376

allowed, has the right to appeal from all interlocutory and final orders which *affect* him" (emphasis added).[1] Put another way, "[o]ne who has become a party by intervention . . . is entitled, *if aggrieved*, to appeal" (emphasis added).[2] The order of the District Court certainly affects the intervenors since they, as wholesalers and retailers, are parties to be protected by the law. Under § 155 of the law, they would have the right to sue for damages from retailers who fail to sell liquor in conformity with the price schedules established under either the mandatory or contractual provisions of the law. In addition, an interest of the intervenors, who are exclusive importers and wholesalers for certain brands, arguably protected by the law is their property rights in particular brand names and trademarks. See Norman Morris Corp. v. Hess Brothers, Inc., 243 F.2d 274 (3rd Cir. 1957). This Court in Morris found that the exclusive national distributor of "Omega" watches had a right to set fair trade prices under the Pennsylvania Fair Trade Act although the Act did not specify who could properly stipulate the prices. Here, §§ 152 and 156 of the Virgin Islands law explicitly vest either the producer or the wholesaler with that right or obligation.

Norman's relies on Milgram v. Loews, Inc., 192 F.2d 579 (3rd Cir. 1951) as precluding the intervenors' appeal. Judge Staley said in Milgram that intervening downtown-theater operators were not adversely affected by a district court decision holding that distributors of motion pictures violated the antitrust laws by limiting first-run exhibitions to downtown theaters. Apart from the fact that the downtown operators were not parties to the decree, the crux of the decision appears to be the statement at page 586 that ". . . [the exhibitors] can hardly contend that they have a legal right to be free from competition." Yet in this case,

---

[1] 3B J. Moore, Federal Practice § 24.15 (2d Ed. 1969).
[2] 9 J. Moore and B. Ward, Federal Practice § 203.06 (2d Ed. 1969).

the intervening liquor importers and wholesalers *do* have a colorable claim that the Virgin Islands law gives them a right to be free from some competition. This contention is much like the one found to provide standing for an appeal in City of Chicago v. Atchison, Topeka & Santa Fe R. Co., 357 U.S. 77 (1958), decided seven years after Milgram. In City of Chicago an ordinance of Chicago was declared unconstitutional by the Court of Appeals for the Seventh Circuit. The ordinance sought, in effect, to protect an older motor carrier (Parmelee) from competition by a new motor carrier (Transfer) by requiring the acquisition from the City of a certificate of convenience and necessity to operate. Before holding the ordinance unconstitutional, the Supreme Court considered whether the old motor carrier had standing to appeal:

"Parmelee has standing to secure review of the judgment below by appeal. It is enough, for purposes of standing, that we have an actual controversy before us in which Parmelee has a direct and substantial personal interest in the outcome. Undoubtedly, it is affected adversely by Transfer's operation. Parmelee contends that this operation is prohibited by a valid city ordinance and asserts the right to be free from unlawful competition. Transfer, on the other hand, suggests that Parmelee has no standing because the city ordinance is invalid and Transfer's operation is lawful. It argues that a party has no right to complain about lawful competition . . . It seems to us that Transfer's argument confuses the merits of the controversy with the standing of Parmelee to litigate them." 357 U.S. 83.

■ In both Fishgold and City of Chicago, the Supreme Court based its decisions permitting appeals on traditional analyses of "standing." This concept has been even further expanded since the time of those decisions by such cases as Association of Data Processing Org., Inc. v. Camp, 397 U.S. 180 (1970) and Investment Company Institute v. Camp, 39 L.W. 4406 (U.S. April 5, 1971); compare Boston Tow Boat Co. v. United States, 321 U.S. 632

(1944). We conclude, therefore, that the intervenors in this case do have a right to pursue this appeal.

## II.

■ Under 48 U.S.C. § 1574(a), the authority of the Virgin Islands Legislature "extend[s] to all rightful subjects of legislation not inconsistent with . . . the laws of the United States made applicable to the Virgin Islands." The Third Circuit has said that this language broaden[ed] the legislative powers of the Virgin Islands to cover the 'ordinary' area of sovereign legislative power. . . ." Virgo Corp. v. Paiewonsky, 384 F.2d 569, 579 (1967). Accordingly, as a matter of power, the Virgin Islands Legislature has the authority to enact a fair trade law, provided that the law is not inconsistent with the laws of the United States made applicable to the Virgin Islands. The District Court here held that the McGuire Act did not have the effect of modifying for territories of the United States the strict prohibition of § 3 of the Sherman Act against price fixing, and consequently found the Virgin Islands Alcoholic Beverages Fair Trade Law void in its entirety. In reaching its decision the District Court reasoned that the "intrastate transactions" language in the McGuire Act is crucial in determining the coverage of the Act and decided therefore that the McGuire Act was inapplicable to the Virgin Islands. An important question raised on this appeal therefore is whether the Virgin Islands fair trade law actually enacted is inconsistent with . . . the laws of the United States" and is thus invalid.

Section 3 of the Sherman Act, 15 U.S.C. § 3, declares illegal "[e]very contract . . . in restraint of trade or commerce in any Territory of the United States. . . ." In 1936 the Supreme Court held that the Illinois "fair trade" statute binding signers and non-signers did not violate due process, despite the fact that the statute restricted freedom

of trade for both signers and non-signers of an intrastate price maintenance agreement. Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U.S. 183 (1936). The next year, aware that there was no constitutional impediment to "fair trade" laws, Congress passed the Miller-Tydings amendment to § 1 of the Sherman Act[3] in order to insure that state "fair trade" acts would not be contrary to the Sherman Act. The authority conferred by the Miller-Tydings Act, however, was read narrowly by the Supreme Court when it held that the Act did not sanction "fair trade" laws which purported to bind non-signers. Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384 (1951). In order to overcome the statutory construction formulated in Schwegmann, Congress enacted the McGuire Act, 15 U.S.C. §§ 45(a)(2)–(5), as an amendment to § 5 of the Federal Trade Commission Act, thereby allowing states to pass "fair trade" laws binding non-signers.

The contractual provisions of the Virgin Islands law are based on provisions in similar laws in force in many states. As noted earlier, they allow the wholesaler to enter into contracts with retailers establishing a minimum resale price for branded liquor, and such contracts bind even retailers who do not sign them.

As argued by the intervenor, the McGuire Act on its face appears to immunize the Virgin Islands law from the strictures of the Sherman Act, and as a result of the passage of the McGuire Act, the Sherman Act no longer inhibits the plenary powers granted to the Virgin Islands by Congress.

"Nothing contained in this section *or in any of the Antitrust Acts* shall render unlawful any contracts or agreements prescribing minimum . . . prices, or requiring a vendee to enter into contracts or agreements prescribing minimum . . . prices, for the re-

---

[3] Section 1 of the Sherman Act provides: "Every contract . . . in restraint of trade or commerce among the several states . . . is declared to be illegal . . . ."

sale of a commodity which bears . . . the trademark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreement of that description are *lawful as applied to intrastate transactions* under any statute . . . now or hereafter in effect in any State, Territory, or the District of Columbia. . . ." 15 U.S.C. § 45(a)(2). (emphasis added).

On the other hand, the appellee, Norman's, and the United States as Amicus Curiae, contend that the Sherman Act expresses the policy of the United States Government to preserve "free and unfettered competition as the rule of trade," Northern Pacific Railway Company v. United States, 356 U.S. 1, 4 (1958); and that any exceptions to this basic and longstanding policy are to be construed strictly in the interest of maintaining a free economy. United States v. McKesson and Robbins, 351 U.S. 305, 316 (1956). Norman's and the Amicus argue that the McGuire Act itself does not alter this official policy, but merely removes the obstacle of the Sherman Act to the adoption by individual states of "fair trade" laws. As to those states which have not enacted "fair trade" legislation, contend the appellees, the Sherman Act remains in effect, barring price maintenance contracts and other schemes in restraint of trade. The appellees argue that no indication appears in the McGuire Act that Congress intended to alter the national policy expressed in the Sherman Act and instead, it is probable that the purpose of the McGuire Act is to permit those states desiring to enact "fair trade" laws to do so. In support of this contention they refer to the legislative history.

"The primary purpose of the bill is to reaffirm . . . that the *application and enforcement* of *State* fair trade laws . . . with regard to interstate transactions shall not constitute a violation of the Federal Trade Commission Act or the Sherman Antitrust Act." H.R. Rep. No. 1437, 82d Cong., 2d Sess. 5 (1952) (emphasis added).

381

Appellees then urge that although Congress in the McGuire Act removed the barrier erected by the Sherman Act against the passage of state "fair trade" laws, the Sherman Act remains in effect and continues to prohibit contractual agreements to fix prices in states that have refused to enact legislation sanctioning such practice. Even though the McGuire Act clearly applies to the Virgin Islands in the sense that it would eliminate the barrier against a validly enacted fair trade act, appellees argue that the territory's legislature appears to be without power to enact legislation such as that now before the Court.

Of course, any doubt as to the legislative power of the Virgin Islands in this regard would be quickly dissipated if Congress were to grant the Virgin Islands legislature power similar to that possessed by the states. Then, if it has such power and proceeds to pass a fair trade act, the McGuire Act would clearly remove the barrier against its effectiveness.

However, it is contended that the Virgin Islands law at present is inconsistent with section 3 of the Sherman Act and therefore would appear to exceed the authority granted to the Virgin Islands legislature by Congress.

■ G.E.M. Sundries v. Johnson & Johnson, Inc., 283 F.2d 86 (9th Cir. 1960)[4] holds that the McGuire Act does extend to the territories the power to enact "fair trade" laws. However, the Ninth Circuit did not consider the analysis advanced by the appellees here, but instead confined their rationale to certain language contained in the McGuire Act. Accordingly, there is some doubt as to the correctness of the G.E.M. Sundries case. But we need not decide this issue—even though it formed the ground for the District Court's decision below—because regardless whether the Virgin Islands may enact some type of "fair

---

[4] See also Esterbrook Pen Co. v. San Juan F. Vilarino 5 Y 10, Inc., 144 F.Supp. 309 (D.P.R. 1956) upholding the Puerto Rican "fair trade" statute on different grounds.

trade" legislation, the present law clearly conflicts with the Sherman Act, notwithstanding the McGuire Act, and therefore is prohibited.

## III.

The mandatory price-filing system in the Virgin Islands law requires the producer, importer, or wholesaler to file with the Board the wholesale price of its liquor, and the brand owner or his licensee to file the minimum retail price for his product. Such filings are effective for the following calendar month. The only significant exception to the requirement that the fixed price be maintained is the proviso permitting the registrant to "meet" competition from a different but comparable brand. Appellants do not contend that the McGuire Act sanctions the mandatory filing requirements of the Virgin Islands law. Indeed, they could not successfully so argue. In Schwegmann, supra, the Supreme Court decided that the Sherman Act, even as amended by the Miller-Tydings Act, prohibited states from requiring mandatory price fixing, as well as forcing non-signers to a price maintenance contract to adhere to the prices set by others. The McGuire Act was passed in order to permit *some* of the activity not legalized by the Miller-Tydings Act—allowing states to authorize voluntary price maintenance agreements and to require retailers not parties to such agreements to adhere to the prices set therein. However, the McGuire Act does not go so far as to permit a state or territory to enact a *mandatory* price stabilization scheme, such as the Virgin Islands has effected in passing the Alcoholic Beverages Act.

Appellants argue that the mandatory price filing provisions are sanctioned under the governmental action doctrine of Parker v. Brown, 317 U.S. 341 (1943). In Parker, the Court upheld the California agricultural marketing program whereby the state, in collaboration with the

United States Department of Agriculture, acted as the exclusive marketing agent for the 1940 crop of raisins, thereby eliminating price competition among sellers. The Court emphasized the extensive governmental involvement and the fact that a government rather than private individuals determined at what price to sell raisins.[5] In Schwegmann, supra, the Court relied on Parker for the proposition that non-signer provisions in state "fair trade" laws were unlawful because "when a state compels retailers to follow a parallel price policy, it demands private conduct which the Sherman Act forbids." 341 U.S. at 389. Later cases have explored in other contexts the meaning of this principle from Parker. In Allstate Insurance Co. v. Lanier, 361 F.2d 870 (4th Cir. 1966), the arrangement for fixing automobile insurance rates in North Carolina was found to contain sufficient governmental involvement. There, rates were set initially by a bureau composed of insurance companies which the district court had found was created and actively supervised by the state. The rates were subject to the approval, disapproval or modification by the Commissioner of Insurance, a state official.[6]

By contrast, sufficient state involvement was found lacking in Asheville Tobacco Board of Trade, Inc. v. Federal Trade Commission, 263 F.2d 502 (4th Cir. 1959). There, a North Carolina statute authorized the creation of local tobacco boards of trade whose purpose was to make rules and regulations governing their members relative to the sale of leaf tobacco at auction. The boards were composed of private businessmen neither appointed nor supervised by the state. Before finding Parker inapplicable, the Court stated:

---

[5] See also United States v. Rock Royal Co-op., Inc., 307 U.S. 496 (1939); Milk Control Board v. Eisenberg Farm Products, 306 U.S. 346 (1939); Costilo, Anti-trust's Newest Quagmire: The Noerr-Pennington Defense, 66 Mich. L. Rev. 333, 340–43 (1967).

[6] See also E. W. Wiggins Airways, Inc. v. Massachusetts Port Authority, 362 F.2d 52 (1st Cir. 1966).

"The teaching of Parker v. Brown is that the antitrust laws are directed against individual and not state action. When a state has a public policy against free competition in an industry important to it, the state may regulate that industry in order to control or, in a proper case, to eliminate competition therein. It may even permit persons subject to such control to participate in the regulation provided their activities are adequately supervised by independent state officials . . . [citations omitted] . . . But such action must be state action, not individual action masquerading as state action. A state can neither authorize individuals to perform acts which violate the anti-trust laws nor declare that such action is lawful." 263 F.2d at 509.

See also George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 424 F.2d 25, 30–31 (1st Cir. 1970) where the Court rejected "the facile conclusion that action by any public official automatically confers exemption"; Travelers Insurance Co. v. Blue Cross of Western Pennsylvania, 298 F.Supp. 1109 (W.D. Pa. 1969) (Sorg. J.).

The latest cases are in accord with the principle that an arrangement sponsored by the state is not necessarily state action for purposes of the antitrust laws. In Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America, Nos. 28763 and 29487 (5th Cir., filed January 5, 1971), Judge Goldberg, in an exhaustive opinion, reminds us that invoking the phrase "state participation," "only begins the analysis, for it is not every governmental act that points a path to an antitrust shelter."[7] (slip op. at 14). In Woods Exploration, the Court found that while the Texas Railroad Commission, a state agency, does have exclusive authority to establish monthly production levels applicable to natural gas fields, the decision of the Commission was of necessity based primarily upon estimates by the producers of how much they could sell. Accordingly, defendants' alleged conduct of supplying false estimates to the Commission in order to secure a larger production

[7] See Hecht v. Pro Football, Inc., 39 U.S.L.W. 2606 (D.C. Cir., filed May 4, 1971).

allowable at the expense of competitors could not be said to have merged with the final decision of the Commission and to become immunized by Parker: "The Commission was neither the real decision maker nor would have intended its order to be based on false facts." (slip op. at 17).

In Gas Light Co. of Columbus v. Georgia Power Co., No. 30091 (5th Cir., filed March 23, 1971), rate schedules published by an electric utility were found to be state action within the meaning of Parker where the state actively regulated the industry and where the state Public Service Commission held full adversary hearings on the rates and ordered them into effect, "some with major modifications." In such circumstances, the rates published, though initiated by the utility company, became the product of the "considered judgment" of the Commission.

The case which seems to go farthest in applying the Parker doctrine is Washington Gas Light Co. v. Virginia Electric and Power Co., No. 14,605 (4th Cir., filed February 12, 1971). There, the marketing practices involving promotional allowances of the defendant electric company were found to be state action protected by Parker because the State Corporation Commission had the power to prohibit the challenged actions. The Court inferred that the silence of the Commission implied its approval, noting that at one time the Commission had required a modification of the defendant's practices, and after the decision of the district court in that case, the Commission had prohibited all promotional allowances in the state.

■■ The facts here clearly demonstrate that the mandatory filing program of the Virgin Islands Alcoholic Beverages Fair Trade Law does not involve governmental action sufficient to invoke the protection of Parker. Under the Virgin Islands law, the Board has no power to approve, disapprove, or modify the prices fixed by private persons. As the Fourth Circuit said in Asheville Tobacco, supra,

the relevant distinction is between genuine governmental action controlling the anticompetitive practice, and an attempt by government officials to "authorize individuals to perform acts which violate the antitrust laws." The latter conduct is characteristic of the Virgin Islands law, and as such the Virgin Islands law is not protected by Parker.

IV.

■ A final argument of the appellants is that the mandatory provisions are valid as a proper exercise of the power of the Virgin Islands to regulate alcoholic beverages under the twenty-first amendment to the Constitution. Section 2 of that Amendment provides:

> "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

An early decision of the First Circuit pointed out the limited nature of the amendment. In Sancho v. Corona Brewing Corp., 89 F.2d 479, 481 (1st Cir. 1937), the Court noted that the twenty-first amendment:

> "simply withdraws the exclusive control of Congress *under the commerce clause* (article I, § 8, cl. 3), over *commerce* in intoxicating liquors, when their importation is in violation of the laws of a . . . territory. It *does not confer power* upon Puerto Rico as to the enactment of its laws. That power it acquired by virtue of its Organic Act, which Congress is authorized to prescribe by virtue of article 4, § 3, cl. 2, of the Constitution." (emphasis added).

We believe this analysis is sound and explains why states may well have the power to enact a liquor law like that attempted in the Virgin Islands. While the twenty-first amendment allows states to utilize their police powers with respect to liquor in ways which might otherwise offend the Commerce Clause, the amendment does not

387

grant either the states or territories power to legislate. Such power must come from some other source.

■ A primary purpose of Section 2 of the twenty-first amendment was to eliminate any problem the states might have in regulating liquor because of the doctrine of Leisy v. Hardin, 135 U.S. 100 (1890). Although the effect of that case was overruled by the Wilson Act, 27 U.S.C. § 121, Section 2 of the twenty-first amendment removed the need of the states in the future to depend on Congressional grace to regulate the sale of liquor within their borders. See 76 Cong. Rec. 4140–41 (1933) (remarks of Senator Blaine). Like the McGuire Act, the twenty-first amendment merely limited the Commerce Clause authority of the Congress so as to allow existing powers of the states to be exercised. The police powers of the Virgin Islands, as conferred by its Organic Act, however, remain limited by § 3 of the Sherman Act which is not based on the power of Congress to regulate commerce, but rather on the plenary power of Congress to govern the territories. On the powers of states under the twenty-first amendment, see also Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 41–45 (1966); Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 331-2 (1964); cf. Brown v. Jatros, 55 F.Supp. 542–544 (E.D. Mich. 1944); Schwartz v. Kelly, 140 Conn. 176, 99 A.2d 89 (1953), appeal dismissed for want of a substantial federal question, 346 U.S. 891 (upholding Connecticut's mandatory price filing system).

## V.

■ It appears that all the provisions of the Act, whether mandatory or permissive, are inextricably intertwined as a unitary legislative plan to regulate marketing of alcoholic beverages in the Virgin Islands. For example § 152(c) requires the posting of wholesale price schedules of each brand of liquor, and also mandates that the posted prices

388

shall be uniform throughout the Islands. To strike down such mandatory provisions, and to permit the voluntary price maintenance arrangement to remain would undoubtedly cause a result inimicable to the legislative intent to create a wide-sweeping system of beverage marketing. Moreover, the Act does not contain the familiar "severability" clause. Consequently, we affirm the District Court's judgment declaring the entire act void. See Fowler v. Gaye, 301 F.2d 775, 778 (10th Cir. 1962) ; compare United States v. Jackson, 390 U.S. 570 (1968) ; United States v. Curcio, 278 F.2d 95, 97 (3rd Cir. 1960).

Accordingly, the judgment of the District Court will be affirmed.