697 P.2d 948

**In the Matter of ELECTRICAL SERVICE IN SAN MIGUEL COUNTY, New Mexico, Public Service Company of New Mexico, Mora-San Miguel Electric Cooperative, Inc., Case No. 1828:**

**Kathy GONZALES, Robert Gonzales, Appellants,**

**v.**

**PUBLIC SERVICE COMMISSION OF NEW MEXICO, Appellee.**

**No. 15332.**

Supreme Court of New Mexico.

April 9, 1985.

Patricia Glazek, Las Vegas, for appellants.

Gerald Gonzalez, Chief Staff Atty., Geoffrey Sloan, Staff Atty., Santa Fe, for Public Service Com'n.

Clyde F. Worthen, Randolph L. Hamblin, Keleher & McLeod, Albuquerque, for Public Service Co.

## OPINION

FEDERICI, Chief Justice.

This is a direct appeal from the New Mexico Public Service Commission (Commission) pursuant to NMSA 1978, Section 62–11–1 (Repl.Pamp.1984). Robert and Kathy Gonzales (appellants) appeal from the Commission's order in New Mexico Public Service Commission (N.M.P.S.C.) Case No. 1828 which approved "the concept" of the Transfer Agreement entered into by Public Service Company of New Mexico (PNM) and Mora-San Miguel Rural Electric Cooperative (Co-op). Appellants contend that the Commission's order is unlawful, not supported by substantial evidence, and that affected customers were not given proper notice. We affirm.

On June 14, 1983, PNM and Co-op jointly petitioned the Commission for approval of the Transfer Agreement, dated February 28, 1983. The Transfer Agreement amends a 1977 Service Agreement between PNM and Co-op which generally defined the service responsibilities of the two utility companies in the area of Las Vegas, New Mexico. The Transfer Agreement proposes to eliminate pockets of overlap in which PNM continues to serve some customers in Co-op's designated service area and Co-op continues to serve some customers in PNM's designated service area. To implement this plan, the Transfer Agreement provides that PNM and Co-op exchange certain customers, plant, equipment, and money. Appellants are PNM customers who would become Co-op customers under the terms of this agreement.

On August 8, 1983, the Commission-appointed hearing examiner, Leonard A. Helman, issued a procedural order scheduling the public hearing on the matter for September 15, 1983, and specifying requirements for intervention, notice, filing of testimony and pleadings. At the hearing Robert and Kathy Gonzales presented a pro se petition for leave to intervene. Although Co-op objected to the intervention at this point in the proceedings on the grounds of timeliness, the examiner allowed appellants to intervene. Mary Helen Romero and Ted L. Romero signed a petition filed with the Commission objecting to the proposed transfer of their electrical service from PNM to Co-op but did not formally intervene. They have joined with appellants in the briefs filed with this Court but have filed no motions requesting intervention as parties. We consider them to be amici curiae.

On January 19, 1984, the Commission adopted with slight changes the Recommended Decision of the Hearing Examiner approving "the concept" of the Transfer Agreement.

Decisions of the New Mexico Public Service Commission are to be reviewed by this Court solely on the record made before the Commission. NMSA 1978, § 62–11–3 (Repl.Pamp.1984). Appellants have the burden of showing that the Commission's order was unreasonable or unlawful. NMSA 1978, § 62–11–4 (Repl.Pamp.1984). The standard of review for appeals from administrative agencies is whether there is substantial evidence in the record as a whole to support the agency's decision. *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 101 N.M. 291, 681 P.2d 717 (1984).

Appellants contend that the Commission's order is unlawful insofar as it requires Co-op to serve several customers within the city limits of Las Vegas. Of the seven reasons cited by appellants for the order's unlawfulness, two concern alleged conflicts with the New Mexico Rural Electric Cooperative Act, NMSA 1978, §§ 62–15–1 to –32 (Repl.Pamp.1984). Appellants maintain that the order violates Section 62–15–31 of the Rural Electric Cooperative Act by allowing Co-op to operate in a non-rural area and also by permitting it to operate in a municipality without first obtaining a franchise from the governing authorities. The record does not indicate if Co-op ever received such a franchise. It is clear, however, that the Commission in a 1967 order permitted Co-op to provide service within the city limits of Las Vegas and in its 1977 order approving the Service Agreement allowed it to continue to deliver such service.

In the event of any conflict between the Public Utility Act (PUA) and the Rural Electric Cooperative Act, both Acts provide that the PUA will control. NMSA 1978, §§ 62–3–2(C), 62–15–32 (Repl.Pamp.1984). The Commission in this case was acting within its authority to prevent "unnecessary duplication and economic waste" between utility companies, a primary objective of the PUA. NMSA 1978, §§ 62–3–2, 62–6–4 (Repl.Pamp.1984). Its order permitting Co-op to continue its limited service within the city limits of Las Vegas effectuates a stated purpose of the PUA and is controlling.

Appellants further argue that the order is unlawful, because Co-op did not receive a certificate of public convenience and necessity to extend service within the City of Las Vegas or to abandon a portion of their service. NMSA 1978, §§ 62–9–1, 62–9–5 (Repl.Pamp.1984). A certificate, however, is not necessary for an extension of service within any municipality where a public utility has already been lawfully operating. § 62–9–1. Co-op has lawfully been operating within the City of Las Vegas since it received its initial certificate of public convenience and necessity in 1967 in N.M.P.S.C. Case No. 860. It is not required that Co-op obtain a new certificate for the purpose of providing service to the few customers who are to be transferred from PNM to Co-op. Also, a certificate is no longer necessary for an abandonment of service. All that is required is the Commission's permission and approval. § 62–9–5.

Although it is doubtful that a transfer of customers from one public utility to another constitutes an abandonment, the Commission's approval was clearly given and meets the statutory requirements for abandonment.

■ Appellants contend that the Commission's order unlawfully allows PNM to avoid its contractual obligations to affected customers. First, we note that the record contains no reference to contracts between PNM and the affected customers. If contracts are found to exist, they must be implied contracts. A public utility's obligation to provide "adequate, efficient and reasonable service" is, however, statutory and not contractual. NMSA 1978, § 62–8–2 (Repl.Pamp.1984); *Southwestern Public Service Co. v. Artesia Alfalfa Growers' Association,* 67 N.M. 108, 353 P.2d 62 (1960). We know of no obligation that provides for a utility to continue electrical service to a customer for an indefinite term at a set rate. The utility companies in the present case have complied with their rights and obligations as set forth by the PUA.

■ We also disagree with appellants' contention that the Transfer Agreement in this case constitutes an illegal contract in restraint of trade. The agreement was entered into pursuant to a comprehensive state statutory scheme, with the approval and encouragement of a state regulatory commission, and is subject to continuing regulation. *See Gas Light Co. v. Georgia Power Co.,* 313 F.Supp. 860 (M.D.Ga.1970), *aff'd* 440 F.2d 1135 (5th Cir.1971), *cert. denied,* 404 U.S. 1062, 92 S.Ct. 732, 30 L.Ed.2d 750, *rehearing denied,* 405 U.S. 969, 92 S.Ct. 1162, 31 L.Ed.2d 244 (1972). In addition, NMSA 1978, Section 57–1–16 (Cum.Supp.1983) of the New Mexico Antitrust Act specifically exempts from the Act arrangements that are approved by a regulatory body acting under statutory authority.

■ Appellants also claim the Commission's order violates NMSA 1978, Section 62–8–6 (Repl.Pamp.1984) by discriminating against the affected customers. Such an interpretation misconstrues this statute. The statute is applicable to a utility, not to the Commission itself. The Commission sets rates for each utility based upon that utility's unique circumstances, and as a result rates often differ from utility to utility for a particular group of customers. Such variation between rates of different utilities is not discrimination within the meaning of Section 62–8–6.

■ Appellants next assert that there is not substantial evidence to justify the transfer of the 14 customers from PNM to Co-op. Recognizing that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Rinker v. State Corporation Commission,* 84 N.M. 626, 627, 506 P.2d 783, 784 (1973), we find that the evidence is more than adequate to support the Commission's decision. The evidence shows that approval of the entire agreement is in the best interests of the public and will prevent economic waste, duplication, and further territorial disputes.

Finally, it is appellants' contention that notice should have been given in accordance with Rule 8–4 of the N.M.P.S.C. Second Revised General Order No. 1. The hearing examiner in his procedural order provided that the Commission's Rules of Practice and Procedure, which usually are applicable only to rate cases, apply to this case except as modified by the terms of the order itself. The order's requirements and schedule for notice, therefore, supersede any conflicting provisions in the rules. Furthermore, the rules themselves provide that a hearing examiner may modify the rules in any manner not prohibited by statute. N.M.P.S.C. Rule 1–4, Second Revised General Order No. 1.

■ We find that appellants had reasonable notice and an opportunity to be heard. *See Jones v. New Mexico State Racing Commission,* 100 N.M. 434, 671 P.2d 1145 (1983). The form and content of the notice was specifically approved by the hearing examiner. PNM exceeded the requirements of the hearing officer's procedural

order by hand-delivering notice to 12 of the 14 affected customers including appellants. Moreover, appellants were allowed to intervene despite their failure to file a timely petition, to question the witnesses at the hearing, and to present their views.

In conclusion, we hold that the Commission's order is reasonable, supported by substantial evidence, and a lawful exercise of the Commission's authority under the Public Utility Act. The Commission's order is affirmed.

IT IS SO ORDERED

RIORDAN and STOWERS, JJ., concur.