**E. W. WIGGINS AIRWAYS, INC.,**
**Plaintiff, Appellant,**

v.

**MASSACHUSETTS PORT AUTHORITY**
**et al., Defendants, Appellees.**

**No. 6694.**

United States Court of Appeals
First Circuit.

Heard May 3, 1966.

Decided June 15, 1966.

Arthur H. Bloomberg, Boston, Mass., with whom Grabill, Ley & Butterworth, Boston, Mass., was on brief, for appellant.

Warren F. Farr, Boston, Mass., with whom Donald R. Grant and Ropes & Gray, Boston, Mass., were on brief, for Massachusetts Port Authority, appellee.

John M. Hall, Boston, Mass., with whom Conrad W. Oberdorfer and Thayer Fremont-Smith, Boston, Mass., were on brief, for Butler Aviation-Boston, Inc., appellee.

John R. Hally, Boston, Mass., for Butler Co., appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is a suit for alleged federal antitrust act violations brought by E. W. Wiggins Airways, Inc. under 15 U.S.C. §§ 15, 26[1] against the Massachusetts Port Authority (the Authority), Butler Aviation-Boston, Inc. (Butler-Boston), and Butler Company (Butler). It involves fixed base operations, so-called,[2] at Logan Airport in Boston. The complaint[3] alleges that the defendants entered into a conspiracy, combination or contract in restraint of trade or commerce in that they attempted to establish a sole and exclusive fixed base operation at Logan in violation of Section 1 of the Sherman Act[4] and that each of them attempted to monopolize and combined or conspired to monopolize said business or operation in violation of Section 2 of the Sherman Act.[5]

---

1. 15 U.S.C. § 15 provides as follows:
    "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."
    15 U.S.C. § 26 provides in pertinent part as follows:
    "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, * * * when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, * * *."

2. A fixed base operation is one that provides facilities, fuel, equipment, supplies and services at an airport which are used by aircraft, crews, passengers and in handling freight connected therewith. It is vital to air transportation.

3. Actually it is an amended complaint but the term complaint as used in this opinion means amended complaint.

4. § 1. "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, * * * is declared to be illegal: * * *." 15 U.S.C. § 1.

5. § 2. "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, * * * shall be deemed guilty of a misdemeanor, * * *." 15 U.S.C. § 2.

The district court dismissed the suit on the ground that the complaint on its face does not state a claim upon which relief can be granted. Plaintiff appeals.

The facts stated most favorably to the plaintiff are as follows. For many years prior to February 1959 when the Authority took over the ownership, management and control of Logan, plaintiff and a competitor, known as Van Dusen,[6] conducted fixed base operations there. Both had leases from the State Airport Management Board.[7] Plaintiff's lease expired on December 31, 1959—Van Dusen's on December 31, 1961. Shortly before the expiration of plaintiff's lease, it asked the Authority for a renewal which was refused, but the plaintiff was allowed to continue its operation at the airport as a tenant at will on a month to month basis. The events that followed form the basis of this complaint and for that reason we relate them in some detail. In mid July 1960 the Authority wrote to a number of fixed base operators, including Van Dusen and the plaintiff, to the effect that it wished to enter into a lease for the fixed base operation at Logan and invited expressions of interest. Among those contacted was the defendant, Butler, who was conducting similar operations at several airports throughout the country. Plaintiff promptly informed the Authority of its interest and shortly thereafter submitted a proposal. In November both the plaintiff and Van Dusen appeared before the Authority and each of them expressed its readiness to undertake the operation.

In January 1961 plaintiff received another letter from the Authority stating that it had deemed it necessary that this proposed facility be conducted by a single operator but stated that it may negotiate with one or more firms before signing a lease and enclosed a list of requirements and qualifications. In response to this letter, plaintiff again advised the Authority that it was ready, able and willing to take on the operation but heard nothing further from the Authority until it received a letter dated February 10 informing it that Butler had been selected. About ten days later the Authority gave the plaintiff notice to vacate the airport premises occupied by it in not more than ninety days. Plaintiff claims that in order to comply with this eviction notice[8] it was forced to sell its business and equipment at Logan which Butler was able to buy at a very low figure. Subsequently the defendant, Butler-Boston, was formed as a subsidiary of Butler Company. A lease was then executed between the Authority and Butler-Boston whereby the latter would take over the Wiggins hangar as of July 1, 1961, and the Van Dusen hangar as of January 1, 1962.

Shortly after the plaintiff received the eviction notice it complained to the Federal Aviation Authority that the Port Authority's decision to establish Butler as its sole and exclusive fixed base operator violated the Federal Aviation Act.[9] Van Dusen joined in this complaint and in February 1962 the Administrator of FAA instructed the Authority to grant Van Dusen an extension allowing it to remain at Logan. In the same proceeding he also instructed the Port Authority to take steps to negotiate with all interested parties to correct the situation complained of. However, the FAA's intervention came too late to save the plaintiff. By that time it had sold its business and equipment at Logan and had departed from the airport. Shortly thereafter plaintiff endeavored to return to Logan but the Authority refused to grant it fueling privileges which rendered its return economically unwise. Van Dusen continues as a fixed base operator at Logan along with Butler-Boston.

Plaintiff contends that early in 1960 the Authority, through one of its mem-

---

6. Its correct corporate name is Van Dusen Aircraft Supplies of New England, Inc.

7. The Authority's predecessor that had operated the airport as an agency of the Commonwealth for several years.

8. It moved out in mid-April 1961.

9. 49 U.S.C. § 1349.

bers, contacted Butler and as a result of subsequent meetings the Authority and Butler entered into a conspiracy whereby the Authority would refuse to allow the plaintiff to remain at Logan; that the Authority would also refuse to renew the Van Dusen lease, thus excluding both of these operators from the airport and that Butler would then take over their operations and become the sole and exclusive fixed base operator at Logan.

Defendants contend that the Authority in its operation of Logan is acting as an agent of the Commonwealth of Massachusetts in the performance of a governmental function, and that a restraint or monopoly resulting from governmental action does not violate the Sherman Act. They further contend that even if the Authority were acting in a purely proprietary capacity, its agreement to make Butler-Boston the sole supplier of fixed base services at the airport would still not have violated the antitrust laws.[10] This leads us to consider what sort of body the Authority really is. By statute[11] it has been constituted a public instrumentality and the exercise of the powers conferred upon it is deemed and held to be the performance of an essential governmental function. It also has wide powers,[12] many of which are bestowed only upon instrumentalities of government.

As stated by the Massachusetts Supreme Judicial Court in Opinion of the Justices, 334 Mass. 721, 731, 136 N.E.2d 223 (1956), the Authority "is in no sense a private or business corporation. * * It has no stockholders. No person can derive a profit through its operations. Only the public is to be benefited. * * "

It is described in the act creating it as "a body politic and corporate" which expression the Court said "is appropriate to a corporation to which is entrusted some of the powers of the State for public purposes." In the opinion of the Massachusetts Supreme Judicial Court, the Authority is a corporation of that character. The court also characterized the Authority "as a purely public corporation for public purposes—an arm of the State—analogous to a municipal corporation." Logan Airport is and always has been a public project.[13]

In carrying out its responsibilities the Authority decided that it was necessary to have only one fixed base operation at Logan and pursuant to that decision, entered into the lease with Butler-Boston. It is clear that in doing so it was acting as an instrumentality or agency of the state, pursuant to the legislative mandate imposed upon it to operate and manage the airport and establish rules and regulations for its use. Plaintiff's contention that the Authority in operating Logan Airport is engaged in a purely proprietary capacity and is conducting a private business has no merit. Nor does the arrangement with Butler-Boston violate the Sherman Act. What was done here was in the exercise of a valid governmental function. The antitrust laws are aimed at *private* action, not at governmental action. As stated by the Supreme Court in Parker v. Brown, 317 U.S. 341, 350–351, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943):

"We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its

10. Defendants Butler-Boston and Butler Company also claim that the only conduct alleged against them is in connection with the Authority's exercise of a governmental function which is not subject to the antitrust laws. Butler Company also contends that the complaint should be dismissed against it because the requirements of venue are not met and the cause of action against it is barred by the statute of limitations, but we do not reach these questions.

11. Mass.St.1956 c. 465.

12. See fn. 11.

13. Ever since it opened in 1923 it has been under public management and control, first by the City of Boston, later by the Department of Public Works of the Commonwealth, then by the Airport Management Board, and since 1959 by the Authority.

legislature. \* \* \* The Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state. \* \* \*"

Our courts have repeatedly reaffirmed this principle. United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Eastern R. R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); United States v. Rock Royal Co-op, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); Miley v. John Hancock Mutual Life Insurance Co., D.C., 148 F.Supp. 299, aff'd, 242 F.2d 758 (1st Cir. 1957), cert. denied, 355 U.S. 828, 78 S.Ct. 38, 2 L.Ed.2d 41.

■ Plaintiff attaches much importance to the fact that under the statute creating it, the Authority can sue and be sued in its own name. From this premise it jumps to the conclusion that the Authority is not immune from liability under the antitrust laws. We cannot agree with this conclusion. Every member of a state agency has an existence distinct from that of the state and can be sued in his own name. But in carrying out the official duties with which the state charges him, he acts for the state and his action is not subject to the antitrust laws. In other words, we do not reach any question of immunity, since there was no attempt on the part of Congress to impose liability in the first place.

■ Plaintiff also urges that the action of the Authority in leasing to Butler-Boston is subject to the antitrust laws because it was taken pursuant to a conspiracy with Butler. We do not find any conspiracy sufficiently alleged in the complaint. All that the plaintiff alleges is that the Authority agreed with Butler to replace Wiggins and Van Dusen with Butler and make Butler the sole and exclusive fixed base operator at Logan; that Butler-Boston was created to carry out that agreement, and the Authority entered into a lease with Butler-Boston under which the latter was to become the sole operator. These facts do not make out a case of conspiracy nor from them can any conspiracy be reasonably inferred. This was a simple agreement or arrangement. The fact that it was exclusive does not under these circumstances necessarily make it a conspiracy or make it illegal. See Donovan v. Pennsylvania Company, 199 U.S. 279, 26 S.Ct. 91, 50 L.Ed. 192 (1905); Parmelee Transportation Company v. Keeshin, 292 F.2d 794 (7th Cir. 1961), cert. denied, 368 U.S. 944, 82 S.Ct. 376, 7 L.Ed.2d 340, rehearing denied, 368 U.S. 972, 82 S.Ct. 437, 7 L.Ed.2d 401 (1962). In this connection, it should be noted that the only conduct of the defendants, Butler or Butler-Boston, alleged to have been in violation of the antitrust laws had to do with their dealings with the Authority in the exercise of a governmental function. If, as we have found, the Authority's conduct was lawful here it would be an unreasonable restriction on its freedom to hold that the other defendants acted illegally in having aided it.

We agree with the district court that the complaint on its face does not state a claim upon which relief can be granted. No other points raised need be considered.

Affirmed.