PUMPKIN AIR, INC., et al., Plaintiffs,

v.

The CITY OF ADDISON, et al., Defendants.

Civ. A. Nos. 3–82–1051–H, 3–82–1135–H and 3–82–1860–H.

United States District Court, N.D. Texas, Dallas Division.

Jan. 28, 1985.

David R. McAtee, Timothy R. McCormick, Thompson & Knight, Dallas, Tex., William H. White, Susman Godfrey & McGowan, Houston, Tex., William W. Wilson, Witts & Wilson, G.H. Kelsoe, Jr., Kelsoe & Kelsoe, Dallas, Tex., for plaintiffs.

Dudley Chambers, Jackson Walker Winstead Cantwell & Miller, Robert L. McCallum, James E. Coleman, Jr., Elizabeth Zervopoulos, Carrington Coleman Sloman & Blumenthal, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

This case is before the Court on Defendant Addison Airport of Texas, Inc., et al.'s Motion for Summary Judgment, filed October 29, 1984; Defendant City of Addison's Motion for Summary Judgment, filed November 5, 1984; Plaintiff Pumpkin Air's Opposition and Motion to Strike, filed December 21, 1984; Plaintiff Friendly Aviation's Contest to Motion, filed December 21, 1984; Class Plaintiff's Response, filed December 31, 1984; Addison Airport's Reply, filed January 14, 1985; and Addison Airport's Response to Motion to Strike, filed January 14, 1985.

### Factual Background

These actions arise out of the acquisition of Addison Airport by the City of Addison, and the subsequent arrangements between Defendants City, Addison Airport of Texas, Inc. (hereinafter "AATI"), Henry Stuart and Robert Gore in managing and operating the airport. Specifically, Plaintiffs complain of conspiratorial anticompetitive conduct aimed at excluding other entities from selling fuel and leasing space at the airport. Causes of action are premised upon federal antitrust laws, the Federal

Aviation Act of 1958, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, and various pendent state law claims.

### State Action Immunity

■ Defendants contend that any anticompetitive actions allegedly engaged in are shielded from liability by the concept of state action immunity, articulated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The *Parker* court, weighing the factors of federalism and state sovereignty, concluded that Congress could not have intended by the passage of the Sherman Act to restrain a state from activities directed by its legislature. *Id.* at 350, 63 S.Ct. at 313. If Plaintiffs were challenging anticompetitive restraints imposed by the state itself, the inquiry in this case need go no further.

Building on *Parker*, the Supreme Court subsequently held that local governments are exempt from antitrust laws only when they act "pursuant to state policy to displace competition with regulation or monopoly public service". *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978). An adequate state mandate for anticompetitive activities of cities exists when it is found from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of. *Id.* at 415, 98 S.Ct. at 1138. The anticompetitive action must constitute municipal action in furtherance or implementation of clearly articulated and affirmatively expressed state policy, *Community Communication Co. v. City of Boulder*, 455 U.S. 40, 102 S.Ct. 835, 841, 70 L.Ed.2d 810 (1982), to replace competition with regulation. *Hoover v. Ronwin*, —— U.S. ——, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590 (1984). In addition, it is also relevant to assess the degree to which the state supervises its representative in implementing the challenged policy. *Hoover*, 104 S.Ct. at 1995; *California*

*Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980); *United States v. Southern Motor Carriers Rate Conference*, 702 F.2d 532, 538 (5th Cir.1983) (en banc).

■ Despite its name, the state action immunity can be available under certain circumstances to private persons. Defendants AATI, Stuart and Gore apparently seek to avail themselves of this shelter. In *Southern Motor Carriers*, the Fifth Circuit collectively fanned smoldering embers and revived the threshold requirement that a private party demonstrate that its allegedly anticompetitive actions must be "compelled by direction of the State acting as a sovereign". 702 F.2d at 536. Although language to this effect appeared in earlier opinions, the *Hoover* court, over a vigorous three-Justice dissent, did not enumerate the requirement of compulsion, referring only to activities carried out pursuant to state authorization. It can likely be concluded that *Hoover* pried loose the straining fingers of the Fifth Circuit on the compulsion requirement.[1] *See State of North Carolina ex rel. Edmisten v. P.I.A. Asheville*, 740 F.2d 274, 277 (4th Cir.1984). (After *Hoover*, it is now "clear" that "a private party has the right [to *Parker* immunity] even when the state does not compel, but only 'authorizes' or 'approves' the activity".)

### Clearly Articulated State Policy

■ Defendants argue that the Texas Municipal Airports Act, Tex.Rev.Civ.Stat. Ann. art. 46d–1 *et seq.* (Vernon 1969) contains the clear articulation and affirmative expression of state policy to displace competition. The relevant portions of the statute are:

Every municipality is authorized ... to plan, establish, develop, construct, enlarge, improve, maintain, equip, operate,

---

1. The Supreme Court granted certiorari on *Southern Motor Carriers*, —— U.S. ——, 104 S.Ct. 3508, 82 L.Ed.2d 818 (1984) and a related case to examine the status of compulsion and state supervision requirement for *Parker* immunity. Argument was heard on November 26, 1984. *See* 53 U.S.L.W. 3411.

regulate, protect and police airports ... including ... the purchase and sale of supplies, goods and commodities as an incident to the operation of its airport properties. (§ 46d–2(a)).

(a) Under Municipal Operation. In operating an airport or air navigation facility owned, leased or controlled by a municipality, such municipality may, except as may be limited by terms and conditions of any grant, loan, or agreement pursuant to Section 12 of this Act, enter into contracts, leases and other arrangements for a term not exceeding forty (40) years with any persons:

(1) granting the privilege of using or improving such airport or air navigation facility or any portion or facility thereof, or space therein for commercial purposes;

(2) conferring the privilege of supplying goods, commodities, things, services or facilities at such airport or air navigation facility; or

(3) making available services to be furnished by the municipality or its agents at such airport or air navigation facility.

\*  \*  \*  \*  \*  \*

In each case, the municipality may establish the terms and conditions and fix the charges, rentals or fees for the privileges for services, which shall be reasonable and uniform for the same class of privilege or service and shall be established with due regard to the property and improvements used in the expenses of operation to the municipality. (§ 46d–4(a)).

\*  \*  \*  \*  \*  \*

(b) Under Other Operation.... [A] municipality may by contract, lease or other arrangement ... grant to any qualified person ... the privilege of operating as agent of the municipality or otherwise, any airport owned or con-

trolled by the municipality. (§ 46d–4(b)).

\*  \*  \*  \*  \*  \*

No ordinance, resolution, rule, regulation, or order adopted by a municipality pursuant to this act shall be inconsistent with, or contrary to, any act of the Congress of the United States or laws of this state, or to any regulations promulgated or standards established pursuant thereto. (§ 46d–7).[2]

In *Woolen v. Surtran Taxicabs, Inc.*, 461 F.Supp. 1025 (N.D.Tex.1978), Judge Higginbotham examined the application of a state action immunity claim based upon the Municipal Airport Act. The court concluded, after examination of the then-existing Supreme Court precedent that the Act did not represent a state policy "to displace competition with regulation or monopoly service":

> The conclusion is all but inescapable that the Texas Legislature did not contemplate the implementation of anti-competitive activities by municipalities in their operation of airports. While it is conceivable that this latter provision [46d–7] was not intended to encompass the antitrust laws, its plain meaning cannot be ignored.

461 F.Supp. at 1031.

The fact that *Woolen* involved an exclusive taxicab franchise at the airport, as opposed to services more directly related to aviation, is of no consequence, given *Woolen's* reliance on a strict issue of statutory construction and legislative intent. Similarly, despite Defendants' unelaborated argument that "the conclusions of *Woolen* may not be correct in light of recent authority", Reply at 5, subsequent Supreme Court authority at a minimum has confirmed the necessity for the analysis conducted by Judge Higginbotham and may possibly impose additional requirements of compulsion and/or active supervision. There is no suggestion in the record that

---

**2.** The Federal Aviation Administration and the City of Addison executed grant agreements to fund and develop Addison Airport. Exhibit A, Defendants' Response to Motion to Strike. One

of the express terms of the grant is that the City and its agents are required to manage the airport as a non-exclusive, non-discriminatory and uniform basis pursuant to 49 U.S.C. § 1349(a).

Defendants could satisfy either of these heightened thresholds.

Defendants rely heavily on *Pueblo Aircraft Service, Inc. v. City of Pueblo,* 679 F.2d 805 (10th Cir.1982), *cert. denied,* 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983). In *Pueblo,* the Tenth Circuit found the Colorado Public Airport Authority law to be "clear, plain and unambiguous" in providing a basis for state action immunity. Although the Colorado provisions are similar in their authorizations to the Texas Act, the former does not appear to contain [3] a section comparable to § 46d–7, subordinating the law's provisions to the mandates of federal law.

Accordingly, the Court is of the opinion that Defendants do not meet the requirements for *Parker* state action immunity.

### Noerr-Pennington

The private Defendants argue that any allegedly anticompetitive arrangements existing at Addison Airport have arisen as a result of bona fide attempts to obtain or influence legislative, executive and administrative actions. As such, they argue, the resulting arrangements are immune from antitrust liability. *Eastern Railroad Presidents Conference v. Noerr-Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

■ The Court must concede that it encounters some difficulty because there is no recitation of the facts upon which the application of this doctrine depends. As an initial matter, it should be noted that this doctrine arises out of the First Amendment prohibition against laws abridging the right to petition the Government for a redress of grievances. Thus, broadly stated, the *Noerr-Pennington* immunity applies only to fend off antitrust liability for the act of petitioning for an anticompetitive governmental action, or banding together with competitors for such purpose. *See generally Feminist Women's Health Center v. Mohammad,* 586 F.2d 530, 542 (5th Cir. 1978), *cert. denied,* 444 U.S. 924, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979). The doctrine most certainly does not insulate every arrangement, contractual or otherwise, reached between private parties and a government entity. It is unclear which allegations of the complaints Defendants suggest are appropriate for application of *Noerr-Pennington.*[4]

■ The well-known counterpart to this doctrine is the "sham" exception. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The resulting, and obvious, principle is that if the petitioning activity is a mere sham, disguising an abuse of governmental processes, then it is inappropriate to afford the perpetrators immunity from the resulting antitrust violations. Similarly, if public officials are participants in a conspiracy, the deference to the First Amendment is unwarranted and there is no exception to antitrust liability. *Affiliated Capital Corp. v. City of Houston,* 735 F.2d 1555, 1566 (5th Cir.1984), *reh. denied en banc,* 741 F.2d 766 (5th Cir. 1984). There are material issues of fact regarding a potential conspiracy among named Defendants and non-parties in this case. Summary judgment is inappropriate. Rule 56, Fed.R.Civ.P.

### Per Se or Rule of Reason

■ Defendants argue that the protested conduct is legal *per se* under the antitrust laws, citing several cases validating exclusive distributorships and related arrangements. An exclusive grant of authority to be the sole fixed base operator at an

---

**3.** At least it was not addressed in the opinion. Colo.Rev.Stat. § 41–4–105 contains a functionally analogous provision, but it refers only to the federal Constitution, and not federal laws.

**4.** To the extent that the petitioning activities are identified as certain actions by Defendant Stuart regarding amendment of the Addison fire code, there is apparently undisputed evidence that Stuart made factually incorrect representations. King Deposition at 86–91. Misrepresentations do not qualify for *Noerr-Pennington* protection. *Woods Exploration and Producing Company v. Aluminum Company of America,* 438 F.2d 1286 (5th Cir.1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972).

airport is not necessarily illegal under the antitrust laws. *E.W. Wiggins Airways, Inc. v. Massachusetts Port Authority,* 362 F.2d 52 (1st Cir.1966), *cert. denied,* 385 U.S. 947, 87 S.Ct. 320, 17 L.Ed.2d 226 (1966).[5]

■ Plaintiffs' various responses do not rebut this contention. Plaintiff Friendly Aviation does not address this issue. Plaintiff Pumpkin Air argues curiously that the legality of Defendants' conduct is a question of fact, and that the conduct is illegal under law other than the antitrust laws, though not independently supportive of a cause of action. Pumpkin Air further argues cryptically that Defendant's battalion of Supreme Court cases do not apply to summary judgment proceedings. The Court is frankly baffled by this particular distinction. The Class Plaintiffs likewise cite no authority contesting the validity of Defendants' statements of antitrust laws, posing only the query "what game is being played here?"

Perhaps part of Plaintiffs' confusion is justifiable. Defendants do not set forth the facts on which their claim of *per se* legality is based. Thus, assuming *arguendo* that a game is being played here, the players are not aware whether they are all playing the same one. The Court does not know precisely what conduct or arrangement it is being asked to approve as automatically legal.

The Operating Agreement between the City and AATI does not purport to grant an exclusive right to do anything in particular. *See* Plaintiffs' Exhibit 12, Operating Agreement § 7(d)(ii) ("It is specifically understood and agreed that nothing herein contained should be construed as granting or authorizing the granting of an exclusive right within the meaning of Section 308(a) of the Federal Aviation Act. 49 U.S.C. § 1349(a)).

The Court is also puzzled by Defendants' reliance on the theory that the City granted an exclusive privilege to AATI to conduct its various affairs at the airport. The depositions and affidavits before the Court reflect that Defendants AATI and Stuart did not consider themselves to be the holders of monopoly licenses, but rather devised a system of "fuel flowage fees" and similar strictures to restrict entry of competitors. *See* Pumpkin Air's Exhibit 55. This was not part of the initial arrangement reached with the City, *see* Seeley Dep. I 74–77; Webster Dep. 29. Similarly, the denial of access to space by potential lessees was not the result of an exclusive grant by the City, but rather of unilateral actions by AATI and Stuart. *See* Pumpkin Air's Ex. 46, 47, 48; Stuart Dep. 227–231.

Assuming for a moment that the unilateral grant of a monopoly by the City would be permissible under the antitrust laws, *but see* 49 U.S.C. § 1349(a), it does not follow that an identical resultant market structure is acceptable if arrived at through nefarious unilateral means by a competitor.

Accordingly, the state of the factual presentation before the Court bars summary judgment on this point at this time.

*Private Cause of Action under 49 U.S.C. § 1349(a)*

■ Defendants have moved for summary judgment[6] on Plaintiffs' claims alleged under 49 U.S.C. § 1349(a), which currently reads, in relevant part:

There shall be no exclusive right for the use of any landing area or air navigation facility upon which federal funds have been expended. For purposes of the preceding sentence, the providing of services at an airport by a single fixed-based operator should not be construed as an exclusive right if it would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and if allowing more than one fixed-based operator

---

5. Such an arrangement may indeed violate the Texas Municipal Airport Act and the FAA Grant Agreements.

6. This portion of the motion might be more accurately characterized as a motion to dismiss.

to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport.

The second quoted sentence was added by amendment by Public Law 97–248, effective September 3, 1982.

Plaintiffs cite two cases to support the implication of a private cause of action. In *Continental Bus System, Inc. v. City of Dallas*, 386 F.Supp. 359, 363–64 (N.D.Tex. 1974), Judge Porter of this Court examined the provision and found that it was not directed to address the situation at issue in that case. He did not reach the question of whether, given applicability of the statute, a private party has a remedy under it.

In *Niswonger v. American Aviation, Inc.*, 411 F.Supp. 769 (E.D.Tenn.1975), *aff'd*, 529 F.2d 526 (6th Cir.1976), the court granted a declaratory judgment that a clause of a lease between a fixed-base operator and an airport was violative of § 1349(a). This case antedated the Supreme Court's statement of the relevant analysis to determine the existence of an implied right of action in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Moreover, only equitable relief was sought and granted, as opposed to the damage remedy sought here. *See* Pumpkin Air's Amended Complaint, Count IV; Trice Complaint, ¶ 38. Such a remedy is contemplated by the Declaratory Judgment Act, 28 U.S.C. § 2201, cited in the court's opinion. 411 F.Supp. at 770.

The only opinion addressing the *Cort* factors' application to § 1349(a) is *Hill Aircraft and Leasing Corp. v. Fulton County*, 561 F.Supp. 667, 673 (N.D.Ga.1982), *affirmed*, 729 F.2d 1467 (11th Cir.1984). The Court considered *Niswonger* and concluded that no private cause of action exists for violation of § 1349. *Accord Guthrie v. Genesee County*, 494 F.Supp. 950 (W.D.N.Y.1980). The Court finds this reasoning to be correct.

Accordingly, Defendants' Motions for Summary Judgment are granted as to claims for damages arising under § 1349.

### Claims Under Section 1983

Defendants also move for summary judgment on Plaintiff Pumpkin Air's claims under § 1983. Defendants correctly note that a corporate plaintiff cannot maintain an action for deprivation of Fourteenth Amendment "privileges and immunities". *Hague v. Committee for Industrial Organization*, 307 U.S. 496, 514, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939). Defendants further argue that the § 1983 claim is too conclusory to support recovery.[7]

Plaintiffs respond that their claim is one based on due process and equal protection, violated by the promulgation of discriminatory leasing practices, restrictive safety standards designed to limit competition, and the promulgation and development of restrictive and excessive fuel flowage fees.

Viewed by the standards applicable to a motion to dismiss, the Court is of the opinion that under no set of facts can Plaintiff prevail under the due process clause. The law does not recognize a right under the due process clause to be free from "anti-competitive injury". *Hill Aircraft, supra.*

With respect to the equal protection issue, the Court can conceive of facts under which such a claim could prevail, but cautions Plaintiff that it will have to satisfy the grueling "rational relationship" test to sustain a classification unrelated to fundamental rights or suspect classes. *See Hill Aircraft*, 561 F.Supp. 679 n. 10.

Accordingly, the Court is of the opinion that Defendants' Motions for Summary Judgment are GRANTED IN PART and DENIED IN PART, and Plaintiffs' claims under 49 U.S.C. § 1349(a) and under the due process clause of the Fourteenth

---

**7.** This argument is again more appropriately the subject of a motion to dismiss or, perhaps, for a more definite statement. Defendants have not presented any facts or evidence to justify a summary judgment on this point.

Amendment should be, and hereby are, DISMISSED.[8]

SO ORDERED.

---

[8] The Court notes that Defendant City has recently moved to dismiss Plaintiffs' claims for monetary damages pursuant to the Local Government Antitrust Act of 1984. A separate ruling will be forthcoming on this issue after all responses are before the Court.