784 F.2d 91
 54 USLW 2466, 1986-1 Trade Cases 66,961
 MONTAUK-CARIBBEAN AIRWAYS, INC., d/b/a Long Island Airlines,
Plaintiff- Appellant,
v.
Judith HOPE, Randall Parsons, Anthony Bullock, Michael J.
Finazzo, and Hugh King, Individually and as the Town Board
of the Town of East Hampton, Charles T. Smith, Russell
Stein, East Hampton Aire, Inc., and Frank LaVigna,
Defendants-Appellees.
 No. 578, Docket 85-7752.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 25, 1985.
Decided Feb. 14, 1986.
 
 I. Leonard Feigenbaum, Melville, for appellant.
 Eric J. Lobenfeld, New York City (Sanford M. Litvack, Valerie A. Cohen, and Donovan, Leisure, Newton & Irvine, New York City, on the brief), for appellees Hope, Parsons, Bullock, Finazzo, King, Smith and Stein.
 Thomas A. Hickey, New York City (Joseph J. Ceccarelli, and Plunkett & Jaffe, New York City, on the brief), for appellees East Hampton Aire, Inc. and Frank La Vigna.
 Before TIMBERS, PIERCE and MINER, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Appellant Montauk-Caribbean Airways, Inc., d/b/a Long Island Airlines, appeals from a judgment entered October 1, 1985 in the Eastern District of New York, Henry Bramwell, District Judge, dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), federal claims and pendent state claims.
 
 
 2
 Appellant commenced this action on February 8, 1985 against members of the Town Board of East Hampton, New York; the Town's attorney; the manager of the Town's airport; East Hampton Aire, Inc. ("EHA"), a competitor airline; and the latter's chief executive officer. The complaint alleged violations of the Sherman Act, 15 U.S.C. Secs. 1, 2 (1982); the Clayton Act, 15 U.S.C. Secs. 15, 26 (1982); the Federal Aviation Act, 49 U.S.C. Secs. 1305(a), 1349(a), 2210(a) (1982); and the Federal Civil Rights Act, 42 U.S.C. Sec. 1983 (1982). The complaint also alleged pendent state claims for breach of contract and conspiracy. The action was based on the Town's refusal to allow appellant to serve as an air carrier and fixed-base operator at the East Hampton Airport on a year-round basis. Appellant alleged that the Town and EHA conspired to create a monopoly during the off-season months for the benefit of EHA.
 
 
 3
 In an order dated May 28, 1985, the district court, pursuant to Fed.R.Civ.P. 12(b)(6), dismissed the Clayton Act, Sec. 1983 and Federal Aviation Act claims. After the Supreme Court's decision in Town of Hallie v. City of Eau Claire, --- U.S. ----, 105 S.Ct. 1713 (1985), and after reargument before the district court, Judge Bramwell dismissed appellant's Sherman Act claim for injunctive relief and the pendent state law claims, and reaffirmed dismissal of the Sec. 1983 claim.
 
 
 4
 We entered an injunction prohibiting interference with appellant's operations pending this appeal. For the reasons set forth below, we dissolve the injunction which we entered pending appeal and we affirm the judgment of the district court dismissing appellant's claims.
 
 I.
 
 5
 This dispute arises from appellant's desire to obtain a lease permitting it to serve as a year-round fixed-base air carrier operator at the East Hampton Airport owned and operated by the Town of East Hampton. In 1978, appellant and the Town entered into a lease under which appellant was to operate as a fixed-base operator and air carrier at the airport. In December 1979, appellant and the Town entered into a ten-year lease which did not require appellant to provide year-round services. Appellant thereafter operated on a seasonal basis between May 1 and September 30 of each year. In 1983 and 1984, apparently after the arrival of new management, appellant sought permission to operate after September 30. The Town Board informed appellant that the lease did not authorize such post-seasonal operations.
 
 
 6
 In the Fall of 1984, appellant filed a complaint with the Federal Aviation Administration (FAA) under 49 U.S.C. Sec. 1349, claiming that the Town of East Hampton unjustly discriminated against appellant. The FAA concluded that the failure to grant a full-year lease was discriminatory. The Town, however, did not act on the FAA decision in favor of appellant.
 
 
 7
 On February 8, 1985, appellant commenced the instant action, seeking the relief set forth above. Appellees, pursuant to Fed.R.Civ.P. 12(b)(6), moved to dismiss the claims. On May 28, 1985 the district court dismissed the Clayton Act claims for damages on the basis of the Local Government Antitrust Act of 1984, 15 U.S.C. Sec. 35 (Supp. II 1984) (the Act).[1] The court also dismissed the claims asserted under the Federal Aviation Act and Sec. 1983. The court thereafter granted the appellees' motion for written reargument pursuant to Local Rule 3(j). In its decision of September 4, 1985, the court, applying the Supreme Court's recent decision in Town of Hallie v. City of Eau Claire, --- U.S. ----, 105 S.Ct. 1713 (1985), dismissed the remaining antitrust claims under the state action doctrine. The court also reaffirmed its decision to dismiss the Sec. 1983 claims; and, finding no private cause of action under the Federal Aviation Act, dismissed those claims as well.
 
 II.
 
 8
 The principal issue raised on appeal is whether the Act or the state action doctrine, or both, bar appellant's antitrust action against a municipality which owns and operates a local airport. In determining whether the district court, pursuant to Rule 12(b)(6), properly dismissed appellant's federal claims, we must view the factual allegations in the complaint as true. Jones-Bey v. Caso, 535 F.2d 1360, 1362 (2 Cir.1976).
 
 
 9
 The complaint alleged that appellees Town and EHA conspired to restrain trade and create a monopoly in favor of EHA in violation of the Clayton and Sherman Acts. Appellant submitted to the Town Board a proposed lease amendment which provided for the elimination of any seasonal restriction on appellant's operation. The Board held a public hearing but reached no formal decision. The lease has not been modified. Appellant argues that EHA has usurped a significant share of appellant's air carrier business.
 
 
 10
 Judge Bramwell held that the Act barred appellant's antitrust claim for treble damages under the Clayton Act. The Act insulates municipalities and their representatives from monetary claims arising under the antitrust laws. This recently enacted statute provides:
 
 
 11
 "No damages, interest on damages, costs, or attorney's fees may be recovered under section 15, 15a, or 15c of this title from any local government, or official or employee thereof acting in an official capacity."
 
 
 12
 15 U.S.C. Sec. 35.
 
 
 13
 Congress enacted this statute prior to the Supreme Court's decision in Hallie. Its legislative history reflects the desire of Congress to broaden the shield protecting municipalities from antitrust claims for damages. The statute was enacted, in part, "in response to concern with Supreme Court decisions over the past few years that appear to have limited the extent that antitrust immunity applicable to States will be accorded to local governments." H.R.Rep. No. 98-965, 98th Cong., 2d Sess. 2, reprinted in 1984 U.S.Code Cong. & Ad. News 4602, 4603. Thus, it is fair to assume that Congress intended greater protection for municipalities than the parameters of the pre-Hallie state action doctrine provided.
 
 
 14
 Appellant argues, however, that, in the absence of an articulated state authorization for the town board members' conduct, appellees were not acting "in an official capacity", and therefore fall outside the protection of the Act. This narrow interpretation, which would provide no greater protection than that which the federal common law afforded, is not what Congress intended.
 
 
 15
 The legislative history of the Act indicates that Congress, concerned with the number of antitrust actions brought against municipalities and the limited immunity available under the then-existing state action exemption, intended that the phrase "acting in an official capacity" be given broad meaning. An affirmative grant of authority is not required.
 
 
 16
 "The definition of official local conduct is intended to be as broad as the local government's authority--encompassing 'legislative, regulatory, executive, administrative, or judicial authority' of a local government. The Committee assumes that this authority will most often stem from broad home rule grants, or from more specific State grants of authority to the local entity. The definition thus removes any requirement imposed by the Supreme Court in Community Communications Co. v. City of Boulder, [455 U.S. 389 (1978) ] that there be a specific and affirmative grant of a State's authority to the local government in every instance."
 
 
 17
 H.R.Rep. No. 98-965, 98th Cong., 2d Sess. 20-21, reprinted in 1984 U.S.Code Cong. & Ad. News 4602, 4621-22.
 
 
 18
 In light of the desire of Congress to grant broad immunity from damages for noncriminal acts by local officials and the authority which New York law grants to municipalities in the operation of local airports,[2] we believe that the district court was correct in holding that appellant failed to state a claim upon which relief can be granted under the Clayton Act for damages against the Town of East Hampton. The Act bars such a claim.
 
 
 19
 The Act, however, does not apply to claims for injunctive relief under the Sherman Act. See 15 U.S.C. Sec. 35; H.R.Rep. No. 98-965, supra, reprinted in 1984 U.S.Code Cong. & Ad. News 4602, 4603.
 
 
 20
 The question therefore of whether the court properly dismissed the instant claims must be examined in light of the Supreme Court's decision in Hallie. There, certain townships sought injunctive relief, alleging that the City of Eau Claire violated the Sherman Act by acquiring a monopoly over the provision of sewage treatment services and by tying such services to sewage collection and transportation services. In holding that the municipality was immune from such antitrust actions, the Court reexamined the line of cases which established the state action immunity doctrine. Parker v. Brown, 317 U.S. 341 (1943); City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389 (1978); Community Communications Co. v. City of Boulder, 455 U.S. 40 (1982).
 
 
 21
 Hallie broadened the immunity available to municipalities. To be exempt from antitrust violations, municipalities must establish "that their anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.' " Hallie, supra, 105 S.Ct. at 1716 (quoting City of Lafayette, supra, 435 U.S. at 413). A municipality will be entitled to the protection of the state action exemption where it "demonstrate[s] that it is engaging in the challenged activity pursuant to a clearly expressed state policy." Hallie, supra, 105 S.Ct. at 1717.
 
 
 22
 The Hallie Court, however, interpreted broadly a "clear articulation" requirement of state policy. It is not necessary for the state legislature to have stated explicitly that it expected a municipality to engage in conduct having anticompetitive effects. Id. at 1718. Rather, if the legislature " 'contemplated the kind of action complained of', this is sufficient to satisfy the clear articulation requirement of the state action test." Hallie, supra, 105 S.Ct. at 1719 (quoting City of Lafayette, supra, 435 U.S. at 415). The Court also abandoned the requirement that, to be exempt, the state must supervise actively the municipality's activity. Id. at 1721.
 
 
 23
 In light of the Supreme Court's recent holding with respect to the immunity of municipalities from antitrust violations, we turn to the New York statutes which confer authority on municipalities to operate local airports. Under N.Y.Gen.Mun.Law Secs. 350-357 (McKinney 1974 & Supp.1984-85), the state legislature authorized local legislative bodies to establish, operate and maintain local airports, to acquire and lease real property, and to enter into exclusive and non-exclusive contracts. Specifically, Sec. 352 provides that a town board operating a local airport may:
 
 
 24
 "1. Construct, develop, improve, equip, maintain and operate the same.
 
 
 25
 2. Adopt regulations and establish fees or charges for the use thereof, and fix civil penalties for the violation of such regulations and provide for their enforcement.
 
 
 26
 3. Provide and charge for all services, concessions or other usual or incidental facilities rendered, conducted or maintained thereat.
 
 
 27
 4. Purchase and sell aviation petroleum products, aircraft accessories and parts, and provide and charge for the servicing and repairing of aircraft, and for all other services reasonably necessary or incidental to the operation of such airport or landing field.
 
 
 28
 5. Lease, or sub-lease the real property or lease, contract or otherwise agree, on an exclusive or non-exclusive basis, for the entire operation of such airport or landing field, or of any part thereof, or for the rendering of various services or the conduct of business activities, on or at said airport or landing field subject to the provisions of section three hundred fifty-two-a of this chapter; provided, however, that no such lease or contract shall be made until the governing body of the municipality shall have held a public hearing in respect thereto on at least ten days notice published in two newspapers having general circulation in the municipality, and provided further that any lease of an entire or portion of an airport or landing field, together with the facilities thereon, or contract for the operation of an airport or landing field or portion thereof shall be for a term not exceeding forty years and shall expressly provide that the said airport or landing field shall be used only for aviation purposes and for other purposes required for or necessary to the efficient and successful operation of an airport or landing field, upon such terms as shall require the operation of the same as a public airport or landing field for the general use of the public and for the benefit of such city, county, village or town...."
 
 
 29
 N.Y.Gen.Mun.Law Sec. 352 (McKinney 1974 & Supp.1984-85). This delegation of authority declares a state policy that municipal airport operators may enter into exclusive lease arrangements. This effectively replaces competition with regulation. We therefore must assume that the New York legislature contemplated the kind of anticompetitive activity in which the Town of East Hampton has engaged. In view of this broad statutory authority to enter into exclusive or non-exclusive contracts, it was a foreseeable result that the Town would assert the authority to deny appellant year-long operating rights. Such conduct is a foreseeable consequence of granting to municipalities the power to pursue either anticompetitive action or free-market competition in the area of airport services. The grant of this power is inconsistent with a "neutral ... state policy." Hallie, supra, 105 S.Ct. at 1718. We hold that the Hallie state action test therefore was complied with in this case.[3]
 
 
 30
 Appellant also claims that the state action exemption of Hallie is not available because the Federal Aviation Act, 49 U.S.C. Sec. 1305(a), has preempted state law in this area, leaving no state authorization for such anticompetitive activity despite the New York statutes. The provision of the Federal Aviation Act relied upon prohibits a political subdivision from enacting any law or rule "relating to rates, routes, or services of any air carrier...." 49 U.S.C. Sec. 1305(a)(1). This statute, however, explicitly provides that nothing in the subsection referred to should be "construed to limit the authority of any State or political subdivision thereof ... to exercise its proprietary powers and rights." 49 U.S.C. Sec. 1305(b)(1). The relevant inquiry therefore is whether the Town of East Hampton was exercising its proprietary rights as owner of the Airport when it refused to modify the ten-year lease to which the parties agreed in 1979.
 
 
 31
 We find no authority to support appellant's claim that the Town of East Hampton, as owner of the Airport, must allow appellant to serve as a fixed-base operator at the East Hampton Airport year-round. Nor do we find support for appellant's claim that the Town is compelled to lease to appellant the necessary equipment and services that would permit such year-round air service.[4] Absent such authority, the leases are valid exercises of the Town's proprietary rights granted under N.Y.Gen.Mun.Law Sec. 352. The preemption statute, Sec. 1305, reserves to the states and local government this power.
 
 
 32
 Having held that the Act and the state action doctrine bar the antitrust claims against the Town of East Hampton, there is no basis for holding that East Hampton Aire conspired with the Town to violate the antitrust laws. E.W. Wiggins Airways, Inc. v. Massachusetts Port Authority, 362 F.2d 52, 56 (1 Cir.), cert. denied, 385 U.S. 947 (1966). See Transport Limousine of Long Island v. Port Authority, 571 F.Supp. 576 (E.D.N.Y.1983).
 
 
 33
 We hold that the court properly dismissed the claims against EHA.
 
 III.
 
 34
 Appellant also asserts that the court erred in dismissing its claims under the Federal Aviation Act. The court held that there is no private right of action under 49 U.S.C. Secs. 1305(a), 1349(a). We agree.
 
 
 35
 To determine whether there is an implied private right of action under the statute, we apply the factors set forth in Cort v. Ash, 422 U.S. 66 (1975). Those factors are whether the plaintiff is a member of the class for whose benefit the statute was enacted; whether Congress intended to create a private right of action; whether a private right of action is consistent with the underlying purpose of the legislative scheme; and whether the matter is traditionally relegated to state law. 422 U.S. at 78. Although regulation of interstate air carrier activity traditionally has been a matter of federal law, congressional intent is the most significant of these factors. Touche Ross & Co. v. Redington, 442 U.S. 560, 579 (1979).
 
 
 36
 We agree with those courts which have decided after careful analysis that a private right of action is not available under Sec. 1349(a). E.g., Hill Aircraft & Leasing Corp. v. Fulton County, 561 F.Supp. 667, 673 (N.D.Ga.1982), aff'd, 729 F.2d 1467 (11 Cir.1984); Guthrie v. Genesee County Airport, supra, 494 F.Supp. at 960. The statute provides in pertinent part that "[t]here shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended." 49 U.S.C. Sec. 1349(a).
 
 
 37
 The statute contains no explicit designation of fixed-base operators as beneficiaries. Rather, the law was enacted to benefit the general public as part of a statutory scheme to monitor the expenditure of federal funds. Guthrie, supra, 494 F.Supp. at 959-60. Moreover, as both the Guthrie and Hill Aircraft courts observed, the legislative history of Sec. 1349(a) contains no suggestion that Congress intended to create an implied private right of action.
 
 
 38
 Section 1305(a) of the Federal Aviation Act is a preemption statute which establishes the federal government's sphere of power over the states in areas of interstate air transportation. There is nothing to suggest that Congress intended to create an implied private right of action under that statute. See H.R.Rep. No. 95-1211, 95th Cong., 2d Sess. 16, reprinted in 1978 U.S.Code Cong. & Ad News 3737, 3751-52 (statute designed to prevent uncertainties and conflicts where airlines provide both interstate and intrastate service resulting in different passenger fares).
 
 
 39
 Finally, appellant asserts that the court erred in dismissing its claim under Sec. 1983. The comprehensive enforcement scheme provided in the Federal Aviation Act manifests congressional intent to foreclose an action under Sec. 1983. Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 28 (1981); Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 19 (1981). Appellant must look to the administrative agency responsible for the enforcement of these provisions. Caceres Agency Inc. v. Trans World Airways, 594 F.2d 932 (2 Cir.1979).
 
 
 40
 We hold that the district court was correct in dismissing appellant's claims under the Federal Aviation Act and Sec. 1983.
 
 IV.
 
 41
 To summarize: The district court correctly held that the Local Government Antitrust Act of 1984 bars appellant's Clayton Act claims for damages. The broad delegation of authority which N.Y.Gen.Mun.Law Secs. 350-357 confers on municipalities in the operation of local airports evidences an intent to displace competition with regulation. The state legislature must have contemplated the kind of anticompetitive conduct that would result. Under Hallie, this is sufficient to exempt the Town of East Hampton from both the Clayton Act and Sherman Act antitrust claims. Since Congress expressed no intent to create private rights of action under the Federal Aviation Act, the court properly dismissed the claims under the Federal Aviation Act and Sec. 1983.
 
 
 42
 The injunction pending appeal is dissolved and the judgment of the district court is affirmed substantially for the reasons set forth in Judge Bramwell's opinions of May 28, 1985 and September 4, 1985.
 
 
 43
 Affirmed.
 
 
 
 [1]
 Hereafter in this opinion, when we refer to "the Act", we mean the Local Government Antitrust Act of 1984. When other statutes are referred to, such as the Clayton Act, the Sherman Act, or the Federal Aviation Act, we shall refer to them by name
 
 
 [2]
 See N.Y.Gen.Mun.Law Secs. 350-357 (McKinney 1974 & Supp.1984-85), referred to infra
 
 
 [3]
 Appellant relies on Guthrie v. Genesee County Airport, 494 F.Supp. 950, 955-57 (W.D.N.Y.1980), where the court held that N.Y.Gen.Mun.Law Sec. 350-57 did not meet the City of Lafayette state action test. We are not persuaded that Guthrie would be decided the same way after Hallie. Guthrie relied in part on the active state supervision requirement which the Supreme Court abandoned in Hallie. 494 F.Supp. at 956. See Hallie, supra, 105 S.Ct. at 1721. Moreover, the Guthrie court applied the then-existing state action test in holding that Sec. 352 did not evince an "unambiguous intent on the part of the state legislature to replace competition with monopolistic public service." 494 F.Supp. at 956. After Hallie, the clear articulation test is not so restrictive
 
 
 [4]
 Since the state claims were dismissed with the federal claims, we do not address the issue of whether either party is in breach of contract for violation of the December 1979 lease. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Appellant claims, for example, that while the lease specifically requires that services be provided only between May 1 and September 30, its silence as to off-season services implies the authority to operate for that portion of the year also. Resolution of this issue is not dispositive of the federal claims